## Objections to Presentence Investigation Report dated May 6, 2004[1]

PART A.    THE OFFENSE

Background

*p. 17, ¶ 13*

The offense was investigated by NOAA, not the FBI.

*p. 19, ¶¶ 20-21*

"1984" should be changed to "1987". The Indictment alleges that the conspiracy began in 1987, and there is no allegation that Hout Bay engaged in any illegal activity prior to 1987.

*p. 19-20, ¶¶ 20-22*

Mr. Bengis was not involved in Hout Bay's operations, and therefore has no knowledge regarding the accuracy of the allegations contained in these paragraphs. It is his understanding, however, that Patagonian Toothfish was never harvested, processed, or exported in violation of South African law, and further, that no illegal Patagonian Toothfish was processed at the Icebrand Maine facility. Consequently, Mr. Bengis objects to all references to Patagonian Toothfish in the PSR. (See also ¶¶ 28, 37, 43.)

*p. 20, ¶ 26*

Mr. Bengis objects to the last sentence in this paragraph. At no time did Mr. Bengis "exercise control over affairs at Hout Bay by supervising Hout Bay's personnel and directing Hout Bay operations at times when Arnold Maurice Bengis was unavailable." Mr. Bengis traveled to Cape Town on vacation each year, and often visited Hout Bay, but he never occupied a management position at Hout Bay. He also spent time at Hout Bay in June, 2001, but did not act in a supervisory capacity. Collin van Schalkwyk directed Hout Bay's operations when Arnold Bengis was unavailable.

*p. 21, ¶ 28(f)*

Mr. Bengis is unaware of any evidence that false documentation was submitted to U.S. Customs authorities, and objects to the inclusion of this allegation.

---

[1] Because David Bengis' presentence report was prepared and submitted to the Court on an expedited basis, it was submitted to the Court without prior to submission of Defendant's objections to the report. The Probation Department advised defense counsel that we should inform the Court of any objections to the PSR.

*p. 21, ¶ 28(g)*

Mr. Bengis objects to the allegation regarding South African nationals working in the U.S. without proper work authorization. Although South African nationals without proper work papers did work at Icebrand Maine at times, Mr. Bengis was not directly involved in making the arrangements for these workers. Mr. Bengis relied on Mr. Berman to arrange for these workers to travel to, and work in, the United States.

*p. 22, ¶ 29(c)*

Mr. Bengis objects to the inclusion of the allegation that he was involved in the removal of rock lobster from Hout Bay's storage facilities and the hiding of that lobster in a vessel. Mr. Bengis has no knowledge of these events and was never in a position to partake in such events.

*p. 22, ¶ 29(e)*

Mr. Bengis has no knowledge of the accuracy of this allegation relating to the diversion of an illegal shipment from New York to Singapore and Hong Kong to avoid seizure by U.S. authorities, and objects to its inclusion in the PSR.

**PART C.     OFFENDER CHARACTERISTICS**

Personal and Family Data

Mental and Emotional Health

Employment

*p. 28, ¶ 74*

This paragraph should be modified to reflect the fact that Mr. Bengis's business was designed primarily to handle Maine lobster and other seafood. Moreover, the flash-freezing process that he helped to develop was designed for Maine lobster.

*p. 27, ¶ 75*

This paragraph should be modified to reflect the fact that Mr. Bengis began to get involved in the Maine lobster industry in 1995, but did not move to Maine and start his own business there until 1998.

# ADDENDUM TO THE PRESENTENCE REPORT

## Justification – p. 32

Icebrand Maine was not involved in the "harvesting, processing, and exportation from South Africa" of South African seafood. Icebrand Maine was located in Portland, Maine and did process and sell South African seafood. It was not involved in hunting, exporting, or importing South African seafood.