```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -x
UNITED STATES OF AMERICA          :     S1 03 Cr. 308 (LAK)
           - v. -                 :
                                        DECLARATION OF ADVOCATE
ARNOLD MAURICE BENGIS,            :     BRUCE MORRISON
JEFFREY NOLL, and
DAVID BENGIS,                     :

                Defendants.       :
- - - - - - - - - - - - - - - - -x

CAPE TOWN              }
WESTERN CAPE           } ss.:
REPUBLIC OF SOUTH AFRICA }
```

I, BRUCE GAYE MORRISON, declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am a Deputy Director of Public Prosecutions, with the Directorate of Special Operations (commonly known as the "Scorpions"), a directorate within the National Prosecuting Authority of South Africa. I have been employed by the South African Department of Justice since 11 December 1967, and was appointed as a prosecutor in December 1970. From 1990, until the end of 1995, I served as the Attorney-General of the Republic of Venda, one of the self-development states set up within the borders of the Republic of South Africa during the Apartheid era. I received the status of Senior Counsel on 20 January 1994, which is the South African equivalent of a Queen's Counsel in the United Kingdom. After the election of the new democratic South African Government and the re-incorporation into South Africa of



Venda, I was reassigned to the Office of the Attorney-General for the Western Cape, in Cape Town, South Africa, where I worked primarily on commercial prosecutions. Amongst other things, I was assigned to prosecute P.W. Botha, one of the former Presidents of South Africa, in connection with an offense related to an inquiry by South Africa's post-Apartheid Truth and Reconciliation Commission. In 1999, I was appointed to serve as a Deputy Director to the Investigating Directorate Against Organized Crime ("IDOC"), which was a predecessor of the Scorpions. After the Scorpions were formed in 2001, I was appointed a Specialist Prosecutor, which is my current position. In that capacity, I lead investigations and prosecutions under South Africa's Prevention of Organized Crime Act, as well as prosecutions of serious economic crimes, and high-profile corruption cases.

2. I am the prosecutor in South Africa primarily responsible for an investigation concerning the criminal activities of Hout Bay Fishing Industries Pty Ltd, Cape Town, South Africa ("Hout Bay"), certain affiliated companies, certain of their officers and employees, and a number of fishermen and fisheries inspectors who assisted Hout Bay in their criminal scheme. The investigation, which was authorized in terms of the National Prosecuting Authority Act 32 of 1998 (RSA) by the Investigating Director of the Directorate of Special Operations


Venda, I was reassigned to the Office of the Attorney-General for the Western Cape, in Cape Town, South Africa, where I worked primarily on commercial prosecutions. Amongst other things, I was assigned to prosecute P.W. Botha, one of the former Presidents of South Africa, in connection with an offense related to an inquiry by South Africa's post-Apartheid Truth and Reconciliation Commission. In 1999, I was appointed to serve as a Deputy Director to the Investigating Directorate Against Organized Crime ("IDOC"), which was a predecessor of the Scorpions. After the Scorpions were formed in 2001, I was appointed a Specialist Prosecutor, which is my current position. In that capacity, I lead investigations and prosecutions under South Africa's Prevention of Organized Crime Act, as well as prosecutions of serious economic crimes, and high-profile corruption cases.

2. I am the prosecutor in South Africa primarily responsible for an investigation concerning the criminal activities of Hout Bay Fishing Industries Pty Ltd, Cape Town, South Africa ("Hout Bay"), certain affiliated companies, certain of their officers and employees, and a number of fishermen and fisheries inspectors who assisted Hout Bay in their criminal scheme. The investigation, which was authorized in terms of the National Prosecuting Authority Act 32 of 1998 (RSA) by the Investigating Director of the Directorate of Special Operations



on 20 June 2001, concerned an alleged scheme to over-harvest and illegally export from South Africa large quantities of South Coast rock lobster, West Coast rock lobster, hake, and Patagonian toothfish. The targets of our investigation were investigated for fraud, contraventions of South Africa's Prevention of Organized Crime Act, its Marine Living Resources Act, its Customs and Excise Act, and its Corruption Act.

3. Throughout this investigation, members of the South African prosecution team have worked closely with the National Oceanic and Atmospheric Administration office for Law Enforcement, New Jersey, USA, meeting with them on several occasions both in Cape Town and in the United States, and conferring with them frequently by telephone and e-mail. This close coordination was based on a joint goal of dismantling what we soon learned was a large-scale, international, fish trafficking operation headed by Arnold Bengis.

4. As part of our investigation, on 6 December 2001, we in South Africa were able to establish the required reasonable grounds to seek the arrest of Arnold Bengis, Jeffrey Noll and David Bengis (amongst others). The bases for that conclusion are set forth in the Affidavit of Johannes Dirk Kotze, dated 6 December, 2001. On the same date, we obtained warrants for the arrest of those individuals.



5. Nevertheless, Arnold Bengis, Jeffrey Noll and David Bengis were never arrested by South African authorities. Nor were they ever formally charged in, or prosecuted by, the Republic of South Africa. The arrest warrants were withdrawn in April 2002 pursuant to plea bargain negotiations and as a sign of good faith by the Scorpions.

6. While the South African prosecution team considered going forward with a prosecution of Arnold Bengis, Jeffrey Noll and David Bengis by seeking their extradition from the United States and/or any other country in which they sought refuge, the South African prosecution authority ultimately elected not to pursue that course. There were several reasons for this decision. A principal practical concern was time and expense: We determined that the time and cost involved in investigating, hunting down, and prosecuting these U.S.-based defendants would be prohibitive. In particular, we determined that Arnold Bengis – who has substantial personal financial resources and who was known to frequent the United Kingdom and Israel – would be especially to difficult to track down and extradite. We concluded that, as a practical matter, these defendants simply were beyond the reach of South African authorities.

7. Another important factor we considered in electing not to charge and prosecute these U.S.-based individuals was our



awareness that their crimes likely would not go unpunished. In particular, because of our close coordination with the United States authorities during the course of our investigation, we were aware that the United States was actively pursuing an investigation and possible prosecution.

8. Accordingly, we elected to focus our resources on prosecuting a number of the South African-based entities involved in the scheme. These targets included the company Hout Bay in its corporate capacity, Hout Bay's Cape Town-based operational manager, Collin van Schalkwyk, a number of West Coast rock lobster fishermen and 14 fisheries inspectors who had taken bribes during the course of the scheme. Consistent with our conclusion that the U.S.-based defendants deserved to be prosecuted and punished, we also continued to actively assist the U.S. authorities in their investigation of the U.S.-based defendants (including Arnold Bengis, Jeffrey Noll and David Bengis).

9. In late April 2002, Arnold Bengis returned to South Africa in order to plead guilty on behalf of Hout Bay. During that hearing, Hout Bay pleaded guilty solely to over-harvesting South Coast rock lobster, West Coast rock lobster and hake during the period 1999 through 2001, in violation of South Africa's Marine and Living Resources Act. Hout Bay was never charged with: (i) any over-harvesting that occurred prior to



1999; (ii) the sale or exportation of any over-harvested fish; (iii) or any violations connected with Patagonian toothfish. As regards the Patagonian toothfish there was a dispute over jurisdiction as to whether such fish had been harvested in South African waters.

10. As part of the South African plea agreement, Hout Bay paid a fine of 12 million Rand (approximately $1,2 million at the time), and forfeited two fishing vessels and the fish products contained in a shipping container we had seized.

11. Prior to the trial on April 30, 2002, the Director of Public Prosecutions for South Africa, Bulelani T. Ngcuka, supplied a letter to Arnold Bengis's South African lawyer, in which he stated that the Republic of South Africa would not be prosecuting Arnold Bengis, David Bengis or Jeffrey Noll. Nothing in that letter even remotely suggests that South Africa sought to (or even could) bind the United States. This had been explained to defense counsel on various occasions that we would not bind the United States in any prosecution incentive it sought to take. Moreover, nothing indicates or suggests that South Africa would cease its active cooperation with the U.S. authorities in their investigation of the U.S. branch of Arnold Bengis's criminal organization.

12. Following the April 30, 2002 plea of Hout Bay and Collin van Schalkwyk, we continued to cooperate actively with the

6



U.S. investigation.  As part of that cooperation, Scorpions investigators were sent to the United States twice to meet with the U.S. prosecution team on their formal requests for Mutual Legal Assistance.  On the second occasion, we also sent one of our cooperating witnesses to the United States to be debriefed at length by the U.S. investigators.  U.S. investigators also traveled to Cape Town twice, where we assisted them in interviewing key witnesses to the South African branch of Bengis's criminal scheme, obtaining documents required for their prosecution, and visiting and photographing relevant locations in Cape Town.

     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated:    Cape Town, South Africa
           May 26, 2004

ADV BRUCE GAYE MORRISON SC