

**Exhibit N**



# MEETING NOTE

| | |
|---|---|
| **Subject** | **Mr K Gold** |
| Date | 19 February 2002 |
| Venue | Offices of Mishcon de Reya, London |
| Present | Anthony Holley/Kevin Gold/Arnie Benjis |
| Author | Anthony Holley |
| c.c. | |

Upon the request of Danielle Vides, I travelled over to London to meet with Kevin and Arnie Benjis, although I was initially supposed to meet up with his son, David.

Regrettably, David was called back to the UK, although this proved fortuitous as it is Arnie who has the asset worth and is looking to give his son $500,000.

We therefore discussed his son and his requirements to establish an offshore account within the Anglo-Saxon market place. I outlined the philosophy of SG Hambros Private Banking and emphasised the 'relationship' which would be overseen by myself and my assistant, Donna. The paperwork was taken away and will be completed and forwarded to me by Kevin along with an A1 Introduction Certificate. (It was mentioned that we would also require a certified passport and utility bill).

Moving on to Arnie, he like his son is a national of South Africa who is currently resident in the UK although also spends some time in the US. He has made his money by various mediums and now amongst other things is involved in a rather large '$10 million+' portfolio with UBS in Zurich with which he has an active interest. Arnie mentioned that the portfolio is biased towards emerging market debt, for which he is happy to take the risk of default when compared to the returns achievable. He mentioned that he has been using this philosophy for in excess of 10 years and has seen constant double digit returns and only one default.

Along with Mishcons, he is contemplating establishing an Anglo-Saxon approach with part of his asset worth and hence the reason for the unscheduled meeting. Against the backdrop of his extensive property and investment portfolio with UBS, he is looking to take a more cautious stance with the funds he is looking to forward to us which will be in the tune of $5-$10 million. We talked through our approach for investment management, our research capabilities, the fund shop in Guernsey, etc., as well as the relationship afforded by a private banker such as myself and assistant. Arnie was very keen on the relationship perspective and was looking for someone who would look after the family connection, including himself and his son, etc.

An enjoyable debate was then had in relation to asset allocations, etc. as well as the different types of investment management, namely, execution, advisory and discretionary. Deep down, I believe Arnie will find it very difficult to pass total control of his investments to a third party, whilst at the same time he wishes to receive ideas and opinions from an experienced and respected investment house. We therefore agreed that the advisory approach was the ideal way forward and he was looking for a structure based loosely around the following weightings:-



1. 50% - US bonds ranging from A upwards – a range would be desired.
2. 25% - alternative strategies – not linked/tied to one investment house vis-à-vis impartiality.
3. 25% - equities/funds (no UK or US situs assets in view of domicile and residency).

It was left that I would liaise with one of our investment managers and put forward a proposal for his consideration outlining our approach, our indicative pricing and enclosing some of our research material.

**Action:**

1. Write to Kevin Gold thanking him for his time.
2. Liaise with investment management to draft an advisory proposal.
3. Once agreed, forward to Kevin for his review.

ANTHONY HOLLEY
Private Banker

 **Anthony HOLLEY (JERSEY)**
13/03/2002 15:05

To: Phil MCILWRAITH Cc: Tom FRANCIS

SUBJECT:        Pearl Inv Trading Ltd - Mishcon de Reya

Phil,

Some good news.

I recd a Conf call this afternoon from Kevin Gold and his client Arnie Bengis (beneficial owner of Pearl Inv) following my visit to see them both in late Feb. The purpose of call was to confirm receipt of the proposal I had been working on and the clients desire to firstly transfer funds from UBS in Switz approx. $8M and thereafter to meet in London on Friday with Steve Campbell re concluding Inv mandate.

The documentation to finalise our account opening requirements is currently being concluded. Slight delay as the directors of the BVI company have just changed. Upon speaking with Danielle, Kevins PA, we will receive as a minimum, within the next 24 hours, an introductory certificate with history of client and outline as to origin of funds etc. plus I can pick up passport, utility bills etc. on Friday. Naturally, this compliments my file note following meeting. In meantime we know the following:-

- The beneficial owner who I have met and is Kevin's second biggest client.
- The introducer source, Mishcon De Reya who are an A1.
- The source of the funds, UBS in Switz.
- The company is registered in BVI

My question is whether we are as a group prepared to accept the funds knowing the above, albeit our account opening requirements are currently incomplete. Clearly this raises issues in relation to compliance procedures and reputation/ relationship risk with Mishcon etc.

In an ideal world and speaking as a relationship builder, I would hope that we could accept the funds on the basis of who the introducer is and me having already met the beneficial owner. This would be under the proviso that the account would be blocked until our requirements are complete and funds may only go back to their original source if for whatever reason, however unlikely, this was not concluded to our satisfaction.

Indeed, I have spoken with Colin Garrod re above who confirms we have done similar in past in view of our comfort with Mishcon.

However, after briefly discussing with Tom, he understandably has reservations and thus should the answer be no then I will need clear guidelines as to why etc.

Please excuse my euphoria, although I have worked damn hard on this one!

Tony

# Banking Services
Questionnaire

| Client No | 38 1 9 5 0 1 |
| --- | --- |
| Cabinet | perm man |
| Doc Type | |
| Plan Date | 1/6/10 |
| Pages (if more than one) | 19 |

**Hambros**



**SOCIETE GENERALE**
Private Banking

# Banking Services
## Questionnaire

| | |
|---|---|
| Name of Company/Partnership | PEARL INVESTMENTS TRADING LTD |
| Private Banker | ANTHONY HOLLEY |

**The Société Générale Private Banking Hambros Group of Companies**

The Banking Services will be provided by:
(Please select one entity only)

| | |
|---|---|
| SG Hambros Bank Limited | ☐ |
| SG Hambros Bank (Channel Islands) Limited | |
| Jersey | ☑ |
| Guernsey | ☐ |
| SG Hambros Bank (Gibraltar) Limited | ☐ |

Referred to throughout this Banking Services Questionnaire as SGPB Hambros.

# Identification Documents

We require the following documentation in order for us to fulfil our regulatory responsibilities regarding the verification of the identity of the company/partnership as well as the identity of the individuals connected with it.

**Companies**

### Companies listed on a recognised stock exchange or a subsidiary thereof

We require all of the following documentation:
Certificate of incorporation of the listed company and, where relevant, of any subsidiary company to evidence registered number, date of incorporation and registered corporate name ☐

Most recent audited financial statements (or equivalent) ☐

Where applicable:
Documentation to verify the identity and permanent residential address of any authorised signatory (see identity requirements for individuals, below) ☐

Proof of listing ☐

### All other companies (including limited liability partnerships)

Documentation to verify the identities and permanent residential addresses of all directors, partners, authorised signatories and shareholders (shareholders with an equity stake greater than or equal to 10% only) (see identity requirements for individuals, on page 2) ☐

Certificate of incorporation (or equivalent) ☐

Memorandum and articles of association or equivalent
(non-UK companies and limited liability partnerships only) ☐

Most recent audited financial statements (or equivalent) ☐

Certificate of good standing/certificate of incumbency (non-UK companies only) ☐

Copy of the share register(s) confirming shareholders' names and confirmation that shares are not held in bearer form (if applicable) ☐

Proof of registered status (if applicable) ☐

**Partnerships**

### We require all of the following documentation:

Documents to verify the identities and permanent residential addresses of all partners and all authorised signatories (see identity requirements for individuals, on page 2) ☐

Partnership agreement (if applicable) ☐

Most recent audited financial statements (or equivalent) ☐

Certain documents are considered appropriate for verifying a name while others are appropriate for verifying a permanent residential address. The same document cannot be used to verify both your name and address.

**Individuals**

**Verification of name**

We require one or two* of the following documents:

A current signed passport (showing number, issue date, expiry date, issuing office, date and place of birth, signature and photograph) ☐

A national identity card (showing number, issue date, expiry date, issuing office, date and place of birth, signature and photograph) ☐

Other* ☐

**Verification of permanent residential address**

We require one or two* of the following documents:

A utility bill (not more than three months old and not for a mobile telephone) ☐

A local authority tax bill (valid for the current year) ☐

A current full driving licence (provided not used above) ☐

A bank or building society statement (not more than three months old) or the most recent mortgage loan statement from a registered lender ☐

A tax notification (valid for the current year) ☐

*To be advised by your private banker.

**Notes**

1. In the case of passports, driving licences and national identity cards, please provide certified copies of these documents (black and white). Please do not send originals of these documents by post. In respect of all other documents, please send originals.

2. Certifications must be original and must be performed by an approved member of SGPB Hambros' staff or by an appropriate professionally regulated person, such as a qualified lawyer or accountant, using the following wording:

   **'I hereby certify this to be a true copy of an original document.'**

   The certifier should also record his/her name, title, occupation, firm and the date of certification.

3. A PO Box address is not acceptable as proof of permanent residential address.

If you have any questions on any of the above requirements, please contact your private banker.

**Company/Partnership Details**
Please complete in **BLACK INK** and BLOCK CAPITALS.

## The Company/Partnership

---

**Name and Address**

Full name of the Company/Partnership
(referred to throughout this questionnaire
as the 'Company/Partnership')

PEARL INVESTMENTS TRADING LTD

| Registered address of the Company/Partnership | Trading address of the Company/Partnership |
|---|---|
| PALM CHAMBERS | |
| 197 MAIN STREET | |
| Postcode ROAD TOWN, TORTOLA, BVi | Postcode |

| | |
|---|---|
| Telephone | |
| Email address | |
| Website address | |
| Registered Company no. | 451434 |
| Country of incorporation | BVi |
| Date of incorporation | 3rd JULY 2001 |

| | |
|---|---|
| Principal business of the Company/Partnership including products and services | HOLDING |
| Geographic scope of the business | |

## Group Structure (including partnerships where applicable)

---

Please provide details of parent companies, subsidiaries, fellow subsidiaries, associated companies and trusts (a separate form may be used if necessary).

Complete where applicable

# Director(s)/Partner(s)

**N.B.** Any further director(s) or partner(s) should be listed on a separate form.

**Director/Partner 1**

Surname

Forename(s)

Former name: e.g. maiden name/former married
name/any previous name(s)

Title (Mr/Mrs/Ms/Miss/Dr/Other)

Position

Permanent residential address

Postcode

Nationality

Date of birth

Telephone

Facsimile

Email address

**Director/Partner 2**

Surname

Forename(s)

Former name: e.g. maiden name/former married
name/any previous name(s)

Title (Mr/Mrs/Ms/Miss/Dr/Other)

Position

Permanent residential address

Postcode

Nationality

Date of birth

Telephone

Facsimile

Email address

**Director/Partner 3**

Surname

Forename(s)

Former name: e.g. maiden name/former married
name/any previous name(s)

Title (Mr/Mrs/Ms/Miss/Dr/Other)

Position

Permanent residential address

Postcode

Nationality

Date of birth

Telephone

Facsimile

Email address

**Director/Partner 4**

Surname

Forename(s)

Former name: e.g. maiden name/former married
name/any previous name(s)

Title (Mr/Mrs/Ms/Miss/Dr/Other)

Position

Permanent residential address

Postcode

Nationality

Date of birth

Telephone

Facsimile

Email address

Complete where applicable

## Corporate Director(s)

**N.B.** Any further corporate director(s) should be listed on a separate form.

### Director 1

| | |
|---|---|
| Company name | INWEALTH DIRECTORS S.A. |
| Registered address | PALM CHAMBERS |
| | 197 MAIN STREET |
| | PO BOX 3174, ROAD TOWN |
| Postcode | TORTOLA, BVI |
| Company no. | 1521212 |
| Contact name(s) | DAVID JYKES |
| | KARINE LEBOCEY |
| Telephone | + 41 22 735 08 88 |
| Facsimile | + 41 22 735 08 89 |
| Email address | david@inwealthtrust.com |
| | Karine.Lebocey@inwealthtrust.com |

### Director 12

| | |
|---|---|
| Company name | |
| Registered address | |
| Postcode | |
| Company no. | |
| Contact name(s) | |
| Telephone | |
| Facsimile | |
| Email address | |

### Director 3

| | |
|---|---|
| Company name | |
| Registered address | |
| Postcode | |
| Company no. | |
| Contact name(s) | |
| Telephone | |
| Facsimile | |
| Email address | |

### Director 4

| | |
|---|---|
| Company name | |
| Registered address | |
| Postcode | |
| Company no. | |
| Contact name(s) | |
| Telephone | |
| Facsimile | |
| Email address | |

Complete where applicable

## Beneficial Owner(s)/Controller(s)

List the beneficial owners and/or the principal shareholders and any controllers of the Company/Partnership (a separate form may be used if necessary).

| Name | Capacity | Shareholding |
|------|----------|--------------|
| 1 INWEALTH TRUSTEES SARL AS TRUSTEE OF THE ROSEBUD | TRUSTEE / SHAREHOLDER | 100% |
| 2 SETTLEMENT | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |

## The Company's/Partnership's Current Bank Account

Please give details of the main bank account of the Company/Partnership

| Name of bank | |
|--------------|--|
| Address of bank | |
| | Postcode |

| Account number | Roll number (if applicable) | Sort code or equivalent |
|----------------|----------------------------|-------------------------|
| | | —    — |

**Source of funds opening the account**

**Part 2** The Company/Partnership Account

## Company/Partnership Account Details

| Type of account required | Income ☑ | Capital ☑ | Other ☐ |
|---|---|---|---|
| Title of account | PEARL INVESTMENTS TRADING LTD | | |
| Currency of account (multiple possible) | GBP ☑ | USD ☑ | |
| | CHF ☐ | EUR ☑ | Other ☐ |

## Bank Account Activity

| Purpose of the account | INVESTMENT |
|---|---|
| Estimated frequency of transactions | IN LINE WITH INVESTMENT STRATEGY — C. 3-6 PER MONTH |
| Estimated value range of transactions | C. USD 250K – 500K PER TRADE |

## Bank Account Activity

| If the Company/Partnership is likely to require SGPB Hambros to make or receive any regular international payments, please provide details of the estimated frequency, source and destination countries and of the expected beneficiary or remitter. | Incoming | Outgoing |
|---|---|---|
| | | |

## Bank Statement Dates and Frequency

Statements will be sent quarterly unless otherwise requested below.

| | |
|---|---|
| Frequency | MONTHLY |
| Day | 31ST |

**N.B. Channel Islands and Gibraltar clients only:** Where there have been no transactions on an account during the agreed statement period, a statement will not normally be sent to you. However, you will always receive an annual statement for your account.

## Copy Correspondence

Please provide details of where copy correspondence should be sent. Please also state the capacity in which the recipient will be receiving the copy correspondence (e.g. as the Company's/Partnership's lawyer/accountant) and tick the type of documentation to be provided.

| **Addressee 1** | | **Copy Correspondence** | |
|---|---|---|---|
| Name | INWEALTH DIRECTORS S.A. | **Bank Account** | ☑ |
| Capacity | DIRECTOR | Statements | ☑ |
| Address | C/O INWEALTH TRUST SARL | Deposit advices | ☑ |
| | 6 PLACE DES EAUX-VIVES | | |
| | GENEVA 1207 | **Investment Account** | ☑ |
| | SWITZERLAND | Contract notes | ☑ |
| | | Statements | ☑ |
| | | Valuations | ☑ |
| | Postcode | CGT packages | ☑ |

| **Addressee 2** | | **Copy Correspondence** | |
|---|---|---|---|
| Name | | **Bank Account** | ☐ |
| Capacity | | Statements | ☐ |
| Address | | Deposit advices | ☐ |
| | | | |
| | | **Investment Account** | ☐ |
| | | Contract notes | ☐ |
| | | Statements | ☐ |
| | | Valuations | ☐ |
| | Postcode | CGT packages | ☐ |

## Copy Correspondence continued

| Addressee 3 | | Copy Correspondence | |
|---|---|---|---|
| Name | | **Bank Account** | ☐ |
| Capacity | | Statements | ☐ |
| Address | | Deposit advices | ☐ |
| | | | |
| | | **Investment Account** | ☐ |
| | | Contract notes | ☐ |
| | | Statements | ☐ |
| | | Valuations | ☐ |
| | Postcode | CGT packages | ☐ |

## Requests for Information

You agree that SGPB Hambros may give the following people any information requested by them in writing in relation to the Company's/
Partnership's account(s)
(tick where appropriate):

| **Accountant** | | **Contact Details** |
|---|---|---|
| Bank account(s) only | ☐ | |
| Investment account(s) only | ☐ | |
| Both | ☐ | |

| **Solicitor** | | **Contact Details** |
|---|---|---|
| Bank account(s) only | ☐ | |
| Investment account(s) only | ☐ | |
| Both | ☐ | |

| **Tax Adviser** | | **Contact Details** |
|---|---|---|
| Bank account(s) only | ☐ | |
| Investment account(s) only | ☐ | |
| Both | ☐ | |

| **Other** INVESTMENT ADVISER | | **Contact Details** |
|---|---|---|
| Bank account(s) only | ☐ | DAVID BENGIS |
| Investment account(s) only | ☐ | |
| Both | ☑ | DAVIDBENGIS @ MAC.COM |

# Bank Mandate

We, the signatories, request SGPB Hambros to open a

Company Account ☑

Partnership Account ☐

Limited Partnership Account ☐

I/We authorise SGPB Hambros to act on all instructions relating to such account(s) and to honour and debit to such account(s), whether in credit or overdrawn or becoming overdrawn or closed in consequence of such debit, all cheques, drafts or other orders or receipts for money signed, bills of exchange and promissory notes drawn, accepted or made on behalf of the Company/Partnership provided they are signed or accepted by:

Any authorised signatories acting alone; or* ☑

All authorised signatories acting together; or* ☐

A specified number of authorised signatories acting together.*
Please specify number below: ☐

Other instructions.*
Please specify below: ☐

*Only one of the above options must be completed. If not completed, SGPB Hambros will default to all authorised signatories acting together.

until SGPB Hambros receives notice in writing to the contrary signed in accordance with the above instructions.

## Authorised Signatories

| Name in full (BLOCK CAPITALS) | Official position | Signature |
|---|---|---|
| AUTHORISED SIGNATORIES OF INWEALTH DIRECTORS SA. (PLEASE SEE ATTACHED LIST) | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Alternatively, a separate list of authorised signatories may be provided.

**Mandate by a Partnership only**

The partners will jointly and severally be liable to SGPB Hambros for repayment and satisfaction of all moneys, obligations and liabilities at any time due, owing or incurred from or by the Partnership to SGPB Hambros together with interest, commission, charges and any expenses incurred by SGPB Hambros including all legal and other costs on a full indemnity basis.

It is understood that any balance which may now or hereafter stand to the credit of the account(s) and also any stocks, shares, bonds or securities or other documents, packages or items of any description now or hereafter held by SGPB Hambros for this/these account(s) shall belong to the survivor or survivors of the partners absolutely in the event of any/either of the partners dying while such account(s) continue(s).

Upon any partner ceasing to be a partner by death or otherwise, SGPB Hambros may, failing the receipt of written notice to the contrary from the Partnership, or any of the partners, or the legal personal representatives or trustees of any of the partners, treat the surviving or continuing partner or partners (or if different the partner or partners for the time being) as having full power to carry on the business of the Partnership and to deal with its assets as freely as if there had been no change in the Partnership.

This authority shall remain in force until revoked notwithstanding any change in the constitution or name of the Partnership and shall apply notwithstanding any change in the membership of the Partnership by death, bankruptcy, retirement or otherwise or the admission of any new partner or partners.

**Mandate by a Company and Limited Partnership only**

The Company/Partnership shall be fully liable to SGPB Hambros for repayment and satisfaction of all moneys, obligations and liabilities at any time due, owing or incurred in respect of any such dealings in the name of the Company/Partnership or jointly with any others together with interest, commission, charges and any expenses incurred by SGPB Hambros including but not limited to all legal and other costs on a full indemnity basis.

**It has been further resolved by the Company/Partnership**

That SGPB Hambros be furnished with (a) copies of any special or extraordinary resolutions that may from time to time be passed by the Company/Partnership and (b) any certificates of incorporation on change of name of the Company/Partnership. SGPB Hambros shall be notified immediately in writing signed by any director or the secretary of the Company/Partnership of any change in name or registered address which may from time to time take place.

## Bank Mandate continued

**Codeword**



There is the option of creating a codeword on the account(s) as an additional security measure. If a codeword is used and a request/instruction does not contain it, SGPB Hambros reserves the right not to act on the instruction. The codeword should not be a word that is likely to be guessed by anyone pretending to act on behalf of the Company/Partnership. Authorised signatories must use the agreed codeword in respect of all requests regarding the account(s), including the giving of instructions.

**I/We request that a codeword is used in relation to the Company's/Partnership's account(s). If the authorised signatories do not use the codeword, SGPB Hambros may not accept the instructions.**

**The codeword I/we wish to use is:**

GENEVA

**Telephone, Electronic Mail and Facsimile Mandate**

SGPB Hambros will accept instructions from you by telephone, email or facsimile on the basis that you agree to the standard indemnity provisions as set out below.

**Unless all the authorised signatories and SGPB Hambros agree otherwise in writing, SGPB Hambros may accept any instruction appearing to come from an authorised signatory (or the number of authorised signatories required to act together in giving instructions) which is given in writing or by telephone, email or facsimile or by any other means deemed acceptable by SGPB Hambros.**

**In consideration of SGPB Hambros agreeing to accept instructions by telephone, electronic mail and/or facsimile, I/we jointly and severally agree:**

- **to indemnify SGPB Hambros from and against all actions, proceedings, costs, claims, demands, expenses or losses that SGPB Hambros may suffer or sustain by reason of or on account of having or not having accepted such instructions; and**

- **that SGPB Hambros shall be entitled to debit the Company's/Partnership's account(s) with the amount of any payments SGPB Hambros may make in respect of having accepted such instructions; and**

- **always to provide funds to meet all payments under such instructions, unless other prior arrangements have been made in writing with SGPB Hambros.**

**Private e-Banking Service**

The Private e-Banking Service offers a means of accessing the Company's/Partnership's account(s) via the internet. Further details about this service are set out in the Banking Services Terms of Business. A person nominated by the Company/Partnership can access the account(s) via the Private e-Banking Service but not operate the account(s) on behalf of the Company/Partnership (view-only access).

**The authorised signatory(ies) wish(es) to use the Private e-Banking Service to access the account(s).**

Yes ⬜

No ⬜

Name of the individual nominated to access the Private e-Banking Service:

**SGPB Hambros Duty of Confidentiality**

SGPB Hambros has a duty of confidentiality to its clients and will only disclose information about the Company/Partnership and its financial affairs in the following situations:

- Where SGPB Hambros has been required to disclose the information by law;

- Where SGPB Hambros has a duty to the public to disclose the information;

- Where the disclosure is necessary to protect the interests of SGPB Hambros;

- Where SGPB Hambros has entered into an agreement with a third party service provider in connection with the services SGPB Hambros is providing to the Company/Partnership and it is necessary to disclose the information to enable the service provider to perform its obligations under that agreement. In this case SGPB Hambros will ensure that the service provider is subject to appropriate confidentiality provisions; or

- Where the authorised signatory(ies) has/have consented to such disclosure.

It is also important that you read and understand the conditions in the Banking Services Terms of Business headed 'Confidentiality and Data Protection' and 'Credit Reference Agencies' which explain how SGPB Hambros will deal with confidential information relating to the Company/Partnership.

**Disclosure of Information to Other Société Générale Group Companies**

The Company's/Partnership's private banker is the focal point of the relationship with SGPB Hambros. It is the private banker's responsibility to understand the Company's/Partnership's present and future wealth management needs and to develop solutions for the Company's/ Partnership's specific circumstances. In order to do this the private banker may from time to time need to discuss the Company's/Partnership's affairs with professionals in other companies within the SGPB Hambros Group or other parts of the Société Générale Group, and if appropriate to arrange for such professionals to contact the Company/Partnership directly.

**I/We agree that SGPB Hambros may discuss the Company's/Partnership's affairs with, and if appropriate transfer the Company's/Partnership's confidential information to, other companies within the SGPB Hambros Group, Société Générale Private Banking or other parts of the Société Générale Group. I/We understand that this may result in such companies contacting me/us directly and may also result in the marketing of other Société Générale services to the Company/Partnership where these are appropriate to its circumstances.**

If you **DO NOT** wish information about the Company/Partnership, its account(s), business or positions to be given to a related company as set out above, please select one of the following options:

SGPB Hambros may only discuss the Company's/Partnership's affairs with a company in the SGPB Hambros Group; ☐

SGPB Hambros may only discuss the Company's/Partnership's affairs with a company in the Société Générale Private (which includes the SGPB Hambros Group); ☐

No information may be provided to any company in the Société Générale Group. ☐

**Marketing Activities**

From time to time SGPB Hambros may use the Company's/Partnership's contact details to allow us to market certain services provided by the Société Générale Group which we believe may be of interest to the Company/Partnership.

**I/We agree that SGPB Hambros or other companies in the Société Générale Group may analyse and use the information SGPB Hambros holds about the Company/Partnership to enable SGPB Hambros to provide information (by post, telephone, email or other medium using the contact details I/we have given SGPB Hambros) about products and services offered by SGPB Hambros (or by other companies in the Société Générale Group or selected third parties) which SGPB Hambros believes may be of interest to the Company/Partnership. I am/We are aware that I/we may at any time tell SGPB Hambros that I/we do not want to receive such marketing approaches by writing to the Company's/Partnership's private banker.**

Please tick if you **DO NOT** wish to receive such information. ☐



## Bank Account Declaration

**By signing this declaration:**

- I/We confirm that I/we have read and understood this Banking Services Questionnaire;

- I/We confirm that all the details provided by me/us in this Banking Services Questionnaire are true and correct to the best of my/our knowledge and belief;

- I/We acknowledge receipt of the SGPB Hambros Banking Services Terms of Business and confirm that I/we have read and understood them and agree to be bound by them as they may be amended from time to time;

- I/We will provide you with any future ancillary document(s) that may affect the information provided herein.

**Director/Partner 1**

Signature

Please print name in full   DAVID SYKES
FOR AND ON BEHALF OF INLUEALTH DIRECTORS S.A.

Position   DIRECTOR

Date   24/03/2010

**Director/Partner 2**

Signature

Please print name in full

Position

Date

**Director/Partner 3**

Signature

Please print name in full

Company (if applicable)

Position

Date

**Director/Partner 4**

Signature

Please print name in full

Company (if applicable)

Position

Date

**N.B.** Any further director(s)/partner(s) should sign on a separate form.



# Investment Services
Questionnaire

| | |
|---|---|
| Client No. | 38 1950 1 |
| Cabinet | PENM Agr |
| Doc Type | |
| Doc Date | 06/10 |
| Pages (if more than one) | 74 |



**Hambros**

**SOCIETE GENERALE**
Private Banking

# Investment Services
## Questionnaire

| Name | PEARL INV TRADING LTD |
|---|---|
| Private Banker | ANTHONY HOLLEY |

**The Société Générale Private Banking Hambros Group of Companies**

The Investment Services will be provided by:
(Please select one entity only)

SG Hambros Bank Limited

SG Hambros Bank (Channel Islands) Limited ✓

   Jersey

   Guernsey

SG Hambros Bank (Gibraltar) Limited

Referred to throughout this Investment Services Questionnaire as SGPB Hambros.

# Introduction

SGPB Hambros provides a comprehensive range of investment services. Your private banker will need to gain a full understanding of your financial affairs, investment objectives and attitude to risk so that a portfolio of investments can be constructed to meet your specific requirements.

SGPB Hambros uses a client profiling process called 'Wealth Solutions' to assist in understanding and analysing your investment objectives and attitude to risk, and in producing investment recommendations for your portfolio. Included herein is a set of questions, the answers to which will assist us in the profiling process and will be used to generate your strategic asset allocation report. Your private banker will review this report with you to ensure that it accurately reflects your investment objectives and risk profile. This report will then be used as the basis for matching your investment requirements with a suitable investment profile (see page 3) which sets out the details of how your assets will be invested, including your chosen investment strategy (see page 9 and 10), if applicable.

This profiling will be carried out when you first open an investment services account (excluding execution only services) with SGPB Hambros and will be reviewed with you on a regular basis to ensure your investment profile is kept up to date. It is, however, your responsibility to inform us in writing of any changes to your financial affairs, investment objectives or attitude to risk.

As part of the process of agreeing your investment profile, you will need to decide how involved you would like to be in the management of your portfolio. SGPB Hambros offers discretionary, advisory (both managed and non-managed) and execution only investment services. You may choose to use different services for different parts of your portfolio of investments. Separate accounts will need to be opened for each service selected.

You will appoint SGPB Hambros to operate your accounts (other than execution only accounts) in accordance with the terms of your agreed asset allocation report and investment profile. Our relationship with you will be governed by the terms of this Investment Services Questionnaire and our Investment Services Terms of Business.

# Our Services

Managed Investment
Services

## Discretionary Managed Service

Your portfolio will be actively managed, and we can change the investments within your portfolio to reflect our current market views. You authorise us to exercise our absolute discretion in the management of your cash and investments to an agreed investment strategy, with power to enter into any agreement about your account without further reference to you.

Under the discretionary mandate you will have the choice of a number of investment strategies to which your portfolio will be managed.

## Managed Advisory Service

Your portfolio will be actively managed by your investment adviser on an asset allocation, portfolio construction and product selection basis, which will be agreed with you on a regular basis. Recommendations and transactions will be entered into on your behalf based on this agreed approach only with your express consent. The account will be managed on an ongoing basis and we will regularly review your portfolio with you.

Under the managed advisory mandate you will have the choice of a number of investment strategies to which your portfolio will be managed.

Non-Managed
Investment Services

## Non-Managed Advisory Services

This service may be suitable for you if you are seeking advice from time to time but wish to make your own investment decisions. Your portfolio will not be actively managed and will not be allocated an investment strategy. Recommendations will be made based on SGPB Hambros' views but without regard to the composition of your portfolio other than to ensure it is within your risk profile. We will not take any responsibility for the ongoing management of your portfolio under this service. We will contact you in relation to your account where there is a change in the SGPB Hambros' recommendation in respect of one or more of your holdings.

## Execution-Only Service

We are able to act on an execution-only basis for you. We will only execute a transaction on your behalf once we have received specific instructions from you to do so. We will not provide any advice in respect of such transactions.

Any information provided to you will be for information purposes only and does not purport to be a recommendation or investment advice.

| Service | Level of SGPB Hambros Involvement |
|---|---|
| Discretionary | Active ongoing management at our absolute discretion to an agreed investment strategy |
| Managed Advisory | Active ongoing management with transactions entered into with express approval |
| Non-Managed Advisory | Advice provided from time to time in response to enquiries |
| Execution-Only | No advice or management with transactions undertaken strictly on instruction |

Level of SGPB Hambros involvement

## Client Wealth Solutions Profiling

To ensure that we fully understand your investment objectives and your attitude to risk, a questionnaire will be used to create an investment profile. This profile will be the basis on which all investment advice will be tailored to ensure that at all times our advice and recommendations are in line with your objectives.

The investment profile will be subject to regular review, but should your circumstances change at anytime, please contact your private banker to advise.

**1.** The following types of investment each have different characteristics in terms of complexity, level of risk and potential rewards. Please indicate the level of experience and knowledge that you have of each:

| | |
|---|---|
| Cash funds | ☐ |
| Bonds and bond funds | ☐ |
| Equity and equity funds | ☐ |
| Hedge funds | ☐ |
| Property funds | ☐ |
| Private equity | ☐ |
| Commodities and commodity funds | ☐ |
| Structured products | ☐ |
| Derivative products | ☐ |

**Options:**

A   Experience of holding and understand the type of investment
B   No experience of holding but do understand the type of investment
C   Experience of holding but do not understand the type of investment
D   No experience of holding and do not understand the type of investment
E   Do not wish to hold this type of investment

**2.** Over what time horizon are you investing to meet your objectives?

Less than 3 years ☐      3-5 years ☐      5 years plus ☐

**3.** Do you have a requirement for a specific level of yield or is your main concern the total return from your portfolio?

A   Not a consideration, long term total return is the goal    ☐

B   1%    ☐

C   2%    ☐

D   3%    ☐

E   4% plus    ☐

**4.** In any one year the return on your portfolio may be negative. The charts below show the returns achieved in ten years for 5 portfolios, ranked from the lowest to the best, for the 10-year period. The line indicates the cumulative return over the period. Please select which portfolio would best meet your expectations:

A  Volatile annual returns with expected returns in excess of the market on average

B  Ideally no more than three years of loss in 10 years and a market level of return on average

C  Ideally no more than one year of significant negative return and low risk balanced return on average

D  Ideally no more than one year of loss and cash plus returns on average

E  No expected years of negative return and cash levels of return on average



Portfolio A

Portfolio B

Portfolio C

Portfolio D

Portfolio E

**5.** The answers below set out five portfolios that each have different characteristics regarding the type of assets they contain, and the range of returns that could be anticipated. Please select the portfolio that best meets your expectations:

A  An aggressive portfolio with a wide range of returns

B  A more dynamic portfolio with primarily equity exposure and a broader range of returns

C  A moderate risk portfolio with a balance between equity and bond returns

D  A conservative portfolio with a balance across asset classes and moderate returns

E  Low risk asset classes with lower expected returns

**Client Wealth Solutions Profiling** continued

**6.** Please indicate the level of risk you are prepared to accept:

A  No exposure to market risks          – Safeguarding of capital ☐

B  Limited exposure to market risks      – Conservatively invested assets ☐

C  Diversified exposure to market risks   – Balanced assets ☐

D  Moderate exposure to market risks    – Search for medium-term growth ☐

E  Broad exposure to market risks       – Search for performance ☐

**7.** Should an asset rise significantly more than the market at large over a limited period of time, what would your immediate reaction be without the benefit of advice?

A  To sell whole or part of the asset ☐

B  Do nothing immediately but consider making sales on further rises ☐

C  Do nothing ☐

D  Do nothing immediately but consider making purchases on further rises ☐

E  Purchase more of the asset in the expectation of short term increases ☐

**8.** Some instruments are illiquid, that is they cannot easily be sold at a good price for periods of time. However, they can have long term return characteristics that make them attractive. What is your attitude to holding a proportion of illiquid instruments in your portfolio?

A  No, I would not want to hold such assets ☐

B  Yes, if there is an existing market for the instruments ☐

C  Yes, even if there is no market for the instruments ☐

**9.** Do you anticipate having to realise a percentage of your portfolio to meet unexpected events?

A   No

B   Less than 30%

C   30% to 60%

D   More than 60%

**10.** What proportion of your portfolio would you like to allocate to one of our actively managed strategies?

A   None

B   Up to 25%

C   Up to 50%

D   Up to 75%

E   All

**11.** Please indicate the basis on which your portfolio(s) should be invested

**Managed Services**

A   Discretionary

B   Advisory

**Non-Managed Services**

C   General Advisory

D   Execution Only

# Investment Strategies for Managed Portfolios

As part of the managed investment services, SGPB Hambros provides investment strategies designed to meet the different investment objectives and, most importantly, the different risk profiles of our clients. Your overall investment objectives, which will be set out in your strategic asset allocation report, together with our views of the markets, will determine which investment strategy we recommend for you. Details of your investment strategy will be contained in your investment profile.

**Strategies for Discretionary Managed**

The following benchmark strategies are available under a discretionary managed mandate. Your private banker will discuss the options with you.

**N.B.** The asset allocations shown in the diagrams below are indicative only and reflect the standard positions for each investment strategy. Deviations from the benchmark asset allocation will occur as a result of specific investment decisions or prevailing market and economic conditions. However, any such deviations will be designed to keep the portfolio risk consistent with your stated risk profile.

We reserve the right to change the benchmark asset allocation of a specific strategy as long as the risk attached to the revised investment strategy remains consistent with your overall objectives.



| Strategy 1 | Strategy 2 | Strategy 3 | Strategy 4 | Strategy 5 | Strategy 6 | Strategy 7 |
|---|---|---|---|---|---|---|
| Bonds Portfolio | Defensive | Income and Growth | Balanced | Capital Growth | Aggressive Growth | Absolute Return |

**Key**
Cash
Alternatives
Bonds
Equities

## Bespoke Strategies

Larger portfolios may require a more bespoke approach. Therefore, in addition to our investment strategies above, we can offer individually tailored investment solutions that can exclude certain markets or sectors or hold particular investments that do not usually fall within a particular strategy.

Strategies for Managed
Advisory Mandates

The following strategies are also available under a managed advisory mandate. Your portfolio will be managed based on an asset allocation, portfolio construction and product selection agreed with you on a regular basis. Transactions will be entered into on your behalf based on this agreed approach. The timing of the transactions will be decided upon by the investment adviser.

The difference between the proposed profiles lies in the level of capital protection of the portfolio. The following assets will be considered protected assets:

- 100% Capital Protected Notes
- Conditional Capital Protected Notes
- Sovereign Bonds and Sovereign Bonds Mutual Funds
- Cash

### Defensive Profile

You are prepared to accept the possibility of some fall in the value of your investments in exchange for the potentially higher growth of both capital and income than you would normally expect from cash deposits and fixed interest securities. A minimum of 50% will be invested in protected assets, up to a maximum of 100%.



**Key**

Protected investments
○ Non-protected investments

### Balanced Profile

You are prepared to accept the possibility of some fall in the value of your investments in exchange for the potentially higher growth of both capital and income than you would normally expect from a balanced portfolio invested in stocks and fixed income securities. A minimum of 30% will be invested in capital protected assets, up to a maximum of 100%.



**Key**

Protected investments
○ Non-protected investments

### Capital Growth Profile

Long term growth is your main priority and you are prepared to accept a high degree of fluctuation in your capital. You are prepared to accept short term falls in the value of your investments in exchange for the potentially higher increases in value to be expected from investing a large proportion of capital in equities. There are no constraints on the levels of capital protection of the portfolio.

# Investment Services Selection

Please indicate your selection by placing figures in the boxes. For example if you wish to open two accounts, one with a defensive and one with a capital growth strategy, please select "1" in the respective boxes.

## Discretionary Managed Service

| Strategy Type | Base Currency | | | | | Services Required | | Amount |
|---|---|---|---|---|---|---|---|---|
| | GBP Domestic | GBP International | EUR | USD | Other | Funds-based | Direct PLUS* | |
| Strategy 1: Bonds | ☐ | ☐ | ☐ | ☐ | ___ | ☐ | ☐ | ___ |
| Strategy 2: Defensive | ☐ | ☐ | ☐ | ☐ | ___ | ☐ | ☐ | ___ |
| Strategy 3: Income and Growth | ☐ | ☐ | ☐ | ☐ | ___ | ☐ | ☐ | ___ |
| Strategy 4: Balanced | ☐ | ☐ | ☐ | ☐ | ___ | ☐ | ☐ | ___ |
| Strategy 5: Capital Growth | ☐ | ☐ | ☐ | ☐ | ___ | ☐ | ☐ | ___ |
| Strategy 6: Aggressive Growth | ☐ | ☐ | ☐ | ☐ | ___ | ☐ | ☐ | ___ |
| Strategy 7: Absolute Return | ☐ | ☐ | ☐ | ☐ | ___ | ☐ | ☐ | ___ |
| Strategy 8: Bespoke | ☐ | ☐ | ☐ | ☐ | ___ | ☐ | ☐ | ___ |

Domestic (may result in a higher exposure of UK equities within your chosen strategy)
International (higher international equity exposure than within the domestic option)

*Direct PLUS Portfolio includes the use of direct investments into individual stocks and bonds as appropriate

## Bespoke Strategies

Please provide details

## Investment Services Selection continued

Managed Advisory Service

**Managed Advisory Strategies**

| Profile Type | Base Currency | | | | Amount |
|---|---|---|---|---|---|
| | GBP | EUR | USD | Other | |
| Profile 1: Defensive | ☐ | ☐ | ☐ | _____ | _____ |
| Profile 2: Balanced | ☐ | ☐ | ☐ | _____ | _____ |
| Profile 3: Capital Growth | ☐ | ☐ | ☐ | _____ | _____ |
| Bespoke ✓ | ☐ | ☐ | ✓ | _____ | _____ |

**Bespoke Strategies**

Please provide details

**Constraints**

Please provide details

BESPOKE TARIFF

0.25% ADMIN/ADVISORY FEE

DEALING — 0.25% BONDS  } MIN £100
0.40% EQ/FDS  } PER TRADE

## Investment Services Selection continued

Non-Managed Services

| Mandate | Base Currency | | | |
|---|---|---|---|---|
| | GBP | EUR | USD | Other |
| Non-Managed Advisory | ☐ | ☐ | ☐ | ____ |
| Execution Only | ☐ | ☐ | ☐ | ____ |

## Special Instructions/Notes

## Important Information

SGPB Hambros would like to draw your attention to the following in relation to the products and services that will be provided to you through opening an investment account with us. You should be aware that your relationship with SGPB Hambros will be governed and is subject to this Investment Services Questionnaire and the Investment Services Terms of Business ("Terms and Conditions"). You agree to accept the Terms and Conditions, as amended from time to time, when you commence activity on this account.

## Derivatives Risk Warning

SGPB Hambros reserves the right to use derivative products, including transactions in futures, options and warrants, uncovered options sales and contracts for differences, in your portfolio in accordance with your asset allocation report and investment profile. For low-risk portfolios, the use of such products will be primarily for hedging purposes. With regard to these products, you will or may be liable to make further payments including margin calls (other than charges, and whether or not secured by margin payments) when the transaction fails to be completed or upon the earlier closing of the position.

You confirm that you have reviewed and accept the contents of the "Warrants and derivatives Risk Warnings" set out in clause 31 of the Investment terms of Business.

## Valuations/Custody Statements

Valuations are performed on the basis of the mid-market closing prices in the market appropriate to the holding and the exchange rates at the close, either for the day of valuation or for the latest preceding dealing day.

Valuations will be provided on a quarterly basis or more frequently as agreed with you in writing, but no more frequently than monthly.

We are under no obligation to provide you with any measure of portfolio performance although we will do this on a regular basis if agreed between us.

Custody statements listing those investments held by SGPB Hambros on your behalf will be provided on an annual basis or more frequently as agreed with you in writing.

## Communications

We may from time to time make unsolicited telephone calls to you, but will do so only where we judge this to be in your best interests and to be in accordance with applicable regulatory requirements. Under normal circumstances we will not contact you where we provide a discretionary managed service, but we would expect to contact you from time to time as part of the advisory service. We will not contact you before 9 a.m. or after 9 p.m. (local time) or on Sundays, unless we have specifically agreed otherwise with you.

Please tick if you allow SGPB Hambros to contact you outside these times.

## Payments

Please indicate how income payments (e.g. dividends or interest) due to you should be treated, in the absence of alternative instructions:

Retain in portfolio ✓

Transfer to SGPB Hambros bank account ☐

## Capital Gains Tax Reporting

I/We require UK Capital Gains Tax Reporting → ☐



## Investment Management Account Declaration

- I/We confirm that I/we have read and understood this Investment Services Questionnaire;

- I/We confirm that the private banker has taken me/us through this Investment Services Questionnaire and explained the terms herein and I/we have been given the opportunity to raise questions and/or seek clarification;

- I/We acknowledge that I/we have been provided with a copy of the Investment Services Terms of Business. I/We confirm that I/we have been provided with the opportunity to raise any questions or clarify any matters relating to these terms with the private banker prior to activating the account;

- I/We agree to be bound by the Investment Services Questionnaire and the SGPB Hambros Investment Services Terms of Business, as amended from time to time, from activation of the account;

- I/We acknowledge that I/we have been provided with the standard SGPB Hambros Scale of Charges.

**Main Account Holder/Authorised Signatory**

Signature

Please print name in full    DAVID SYKES FOR AND BEHALF OF INWEALTH DIRECTORS SA.

Date    24/03/2010

**Joint Account Holder/Authorised Signatory (if applicable)**

Signature

Please print name in full

Date

**Account Holder/Authorised Signatory 3**

Signature

Please print name in full

Date

**Account Holder/Authorised Signatory 4**

Signature

Please print name in full

Date

**N.B.** Identification documentation will be required for each joint account holder.

**Mandate Authorising a Third Party to give Dealing Instructions**

**To SGPB Hambros**

| Name of Account Holder/Authorised Signatory | Name of Joint Account Holder/Authorised Signatory (if applicable) |
|---|---|
| PEARL INVESTMENTS TRADING LTD | |

I/We the account holder(s) hereby authorise you until such time as I/we shall give you notice to the contrary in writing to consider

| Third Party Authorised to give Instructions | Additional Authorised Third Party (if applicable) |
|---|---|
| Name DAVID BENGIS | Name |
| Address 6 WYCHCOMBE STUDIOS ENGLANDS LANE LONDON | Address |
| Postcode NW3 4XY | Postcode |

(whose signature(s) appear(s) below) as fully empowered by me/us to give dealing instructions in relation to any of my/our investments and in respect of any corporate actions.

In respect of third party dealing instructions, SGPB Hambros will accept instructions by telephone, email or facsimile on the basis that you, the account holder agree to the standard indemnity provisions as set out below.

Unless I/we and SGPB Hambros agree otherwise in writing, SGPB Hambros may accept any instruction appearing to come from the third party which is given in writing or by telephone, email or facsimile or by any other means deemed acceptable by SGPB Hambros.

In consideration of SGPB Hambros agreeing to accept instructions by telephone, electronic mail and/or facsimile, I/we jointly and severally agree:

- to indemnify SGPB Hambros from and against all actions, proceedings, costs, claims, demands, expenses or losses that SGPB Hambros may suffer or sustain by reason of or on account of having or not having accepted such instructions; and

- that SGPB Hambros shall be entitled to debit my/our account (s) with the amount of any payments SGPB Hambros may make in respect of having such instructions; and

- always to provide funds to meet all payments under such instructions, unless other prior arrangements have been made in writing with SGPB Hambros.

DAVID BENGIS TO SIGN

| Signature | Signature |
|---|---|
| Date March 26, 2010 | Date |

**N.B.** We require identification documentation, as detailed on page 1 of the Banking Services Questionnaire, for all authorised persons prior to any instructions being taken unless they have been previously supplied

## US Withholding Tax – Declaration of Status (to be completed by all parties to the account)

All clients are required to complete a Declaration of Status to confirm that they are not a 'US Person' in the eyes of the US Internal Revenue Service (IRS). If you answer 'No' to all the following questions, you must complete an IRS W-8BEN form, Certificate of Foreign Status of Beneficial Owner for United States Tax Withholding, confirming your non-US status.

If you answer 'Yes' to any of the following questions, we will have to consider you as a 'US Person' for IRS tax purposes. We will then explain the specific rules that apply to your situation and the options available to you. This will include the completion of an IRS W-9 form, Request for Taxpayer Identification Number and Certification.

**N.B.** Where there are more than two parties to a joint account, each party must complete a separate Declaration of Status. A separate W-8BEN form must be completed by each party to the account.

**Main Account Holder**

Please print name in full

Account number

**Joint Account Holder**

Please print name in full

Account number

In connection with the requirements of the United States Withholding Tax Regulations, and in order to enable SGPB Hambros to correctly determine the status and qualification of the account holder(s) as either a 'non-US Person' or a 'US Person' under the Regulations, I/we the account holder(s) hereby confirm the following declarations to SGPB Hambros:

## Non-US Person Declaration

| With regard to your account(s) with us, we request you tick the appropriate options below: | Main Account Holder | | Joint Account Holder (if applicable) | |
|---|---|---|---|---|
| Are you a US citizen? (Sole or dual citizenship, of which one is US citizenship) | Yes ☐ | No ☐ | Yes ☐ | No ☐ |
| Are you a US resident alien? (Lawful permanent resident, e.g. 'green card holder' or substantial physical presence in the United States in the current and previous two years) | Yes ☐ | No ☐ | Yes ☐ | No ☐ |
| Are you a US taxpayer for any other reason? (e.g. dual resident, spouse filing jointly, rescinding US citizenship of long-term residency) | Yes ☐ | No ☐ | Yes ☐ | No ☐ |

**Beneficial Ownership**

I/We hereby declare that I am/we are the beneficial owner(s) of the assets and income to which this form relates.

**Change of Circumstance in Status as a Non-US Person**

I/We undertake to notify SGPB Hambros if my/our status as a 'non-US Person(s)' changes to the status of a 'US Person(s)'.

**Main Account Holder/Authorised Signatory**

Signature

Date

**Joint Account Holder/Authorised Signatory (if applicable)**

Signature

Date

## Form W-8BEN

### Certificate of Foreign Status of Beneficial Owner for United States Tax Withholding

To be completed by all non-US persons

Department of the Treasury Internal Revenue Service

| **Do not use this form for:** | **Instead, use Form:** |
|---|---|
| • A US citizen or other US person, including a resident alien individual | W-9 |
| • A person claiming that income is effectively connected with the conduct of a trade or business in the United States | W-8ECI |
| • A foreign partnership, a foreign simple trust, or a foreign grantor trust | W-8ECI or W-8IMY |
| • A foreign government, international organisation, foreign central bank of issue, foreign tax-exempt organisation, foreign private foundation, or government of a US possession that received effectively connected income or that is claiming the applicability of section(s) 115(2), 501(c), 892, 895, or 1443(b) **Note:** These entities should use Form W-8BEN if they are claiming treaty benefits or are providing the form only to claim they are a foreign person exempt from backup withholding. | W-8ECI or W-8EXP |
| • A person acting as an intermediary | W-8IMY |

### Part I Identification of Beneficial Owner

| | |
|---|---|
| 1 Name of individual or organisation that is the beneficial owner | |
| 2 Country of incorporation or organisation | |
| 3 Type of beneficial owner | |

Individual ☐   Corporation ☐   Disregarded entity ☐   Partnership ☐

Simple trust ☐   Grantor trust ☐   Complex trust ☐   Estate ☐

Government ☐   International organisation ☐   Central bank of issue ☐   Tax-exempt organisation ☐

Private foundation ☐

| | |
|---|---|
| 4 Permanent residence address (street, apt. or suite no., or rural route). Do not use a PO Box or in-care-of address | |
| City or town, state or province Include postal code where appropriate | |
| Country (do not abbreviate) | |
| 5 Mailing address (if different from above) | |
| City or town, state or province Include postal code where appropriate | |
| Country (do not abbreviate) | |
| 6 US taxpayer identification number, if required | SSN or ITIN ☐            EIN ☐ |
| 7 Foreign tax identifying number, if any (optional) | |
| 8 Reference number(s) | |

## Part II Claim of Tax Treaty Benefits (if applicable)

9 **I certify that** (check all that apply):

- The beneficial owner is a resident of _____ within the meaning of the income tax treaty between the United States and that country.

- If required, the US taxpayer identification number is stated on line 6.

- The beneficial owner is not an individual, derives the item (or items) of income for which the treaty benefits are claimed, and, if applicable, meets the requirements of the treaty provision dealing with limitation on benefits.

- The beneficial owner is not an individual, is claiming treaty benefits for dividends received from a foreign corporation or interest from a US trade or business of a foreign corporation, and meets qualified resident status.

- The beneficial owner is related to the person obligated to pay the income within the meaning of section 267(b) or 707(b), and will file Form 8833 if the amount subject to withholding received during a calendar year exceeds, in the aggregate, $500,000.

10 **Special rates and conditions** (if applicable): The beneficial owner is claiming the provisions of Article _____ of the treaty identified on line 9a above to claim a _____ % rate of withholding on (specify type of income): _____ Explain the reasons the beneficial owner meets the terms of the treaty article: _____

## Part III Notional Principal Contracts

11 I have provided or will provide a statement that identifies those notional principal contracts from which the income is **not** effectively connected with the conduct of a trade or business in the United States. I agree to update this statement as required.

## Part IV Certification

Under penalties of perjury, I declare that I have examined the information on this form and to the best of my knowledge and belief it is true, correct, and complete. I further certify under penalties of perjury that:

I am the beneficial owner (or am authorised to sign for the beneficial owner) of all the income to which this form relates;

The beneficial owner is not a US person;

The income to which this form relates is (a) not effectively connected with the conduct of a trade or business in the United States, (b) effectively connected but is not subject to tax under an income tax treaty, or (c) the partner's share of a partnership's effectively connected income; **and**

For broker transactions or barter exchanges, the beneficial owner is an exempt foreign person as defined in the instructions.

Furthermore, I authorise this form to be provided to any withholding agent that has control, receipt, or custody of the income of which I am the beneficial owner or any withholding agent that can disburse or make payments of the income of which I am the beneficial owner.

| **Sign here** | |
|---|---|
| Signature of beneficial owner (or individual authorised to sign for beneficial owner) | |
| Date | Capacity in which acting |

| Full name of Company | PEARL INVESTMENTS TRADING LTD - PORTFOLIO | | **CLIENT No.** |
| --- | --- | --- | --- |
| Full Name(s) of Beneficial Owner(s) | MR DAVID BENGIS | | 381950 |

| | Question | Answer | Risk | | | |
| --- | --- | --- | --- | --- | --- | --- |
| 1 | Is this the first Risk Assessment carried out on this Client Account? | No | | | | |
| 2 | What was the PREVIOUS Risk Level of this Client Account? | High | | | | |
| 3 | According to SGH policy regarding verification of client identity and address (IDV/ADV), have ANY PARTIES to the Account NOT been FULLY IDENTIFIED? | No | | | | |
| 4 | Is the Beneficial Owner or any other directly-related party a Politically Exposed Person (PEP) or associated Person? | No | | | | |
| 5 | Question 5 does not require answering | | | | | |
| 6 | Is the Account 'Hold Mail'? - The *indefinite retention of client correspondence, where the client has no intention of receiving or collecting such correspondence.*" | No | | | | |
| 7 | Has the Company (or any other company within the group structure, if applicable) issued Bearer shares? | No | | | | |
| 8 | EITHER: Does the Company have business interests in a High Risk Country OR is the Beneficial Owner a resident of or have business interests in, or a Source of Wealth derived from, a HRC (see list on SharePoint)? | No | | | | |
| 9 | Do the Company activities involve OR does the Beneficial Owner's wealth derive from, any high risk/sensitive business activity? | No | | | | |
| 10 | "Is there any other reason why you would consider this Account as Higher Risk? See list below" | No | | | | |
| 11 | Is there any other reason why you would consider this Account as High Risk? Examples include: Ongoing/potential litigation, Subject to a Court Order, Serious client complaint, Fees outstanding, Complex Structure | Yes | | | | |
| 12 | What is the Beneficial Owner's Nationality? | SOUTH AFRICA | 2 | 2 | 4 | MEDIUM |
| 13 | In which country does the Beneficial owner reside? | UNITED KINGDOM | 1 | 2 | 2 | LOW |
| 14 | From which country has the Company and Beneficial Owner's wealth derived? | SOUTH AFRICA | 2 | 2 | 4 | MEDIUM |
| 15 | From what activity has the Beneficial Owner accumulated their wealth? | Professional Practice | 1 | 1 | 1 | Low |
| 16 | What is the Country of Incorporation of the Company? | VIRGIN ISLANDS (BRITISH) | 3 | 2 | 6 | HIGH |
| 17 | What is (or will be) the asset value of the Account? | OVER £5M | 3 | 1 | 3 | High |

Risk Level excluding Automatic High Risk Questions    2    **MEDIUM Risk**

Client is High Risk

Provide full details of High Risk reason in COMMENTS box below

| Client Risk    Client is HIGH Risk - Input Olympic AN code 127 | Next Risk Assessment due by * | 31 October 2013 |
| --- | --- | --- |

* Unless any one of the following events occur first, in which case the Risk Assessment must be updated immediately:
A change in our relationship with the Company – for example: value of AUM resulting from new assets introduced/purchased or assets sold/distributed; a change in investment policy; a change in banking relationship (incl. opening a new 'root'; the possibility of litigation or similar; potential financial/reputation risk to SGH, etc.
There is a change in the structure of the Company. This may include the addition/removal of a Shareholder; an External Director, etc.
There is a change the circumstances of any party directly related to the Company (Beneficial Owner; Shareholder; External Director etc) - the change being something that would have a material impact on the KYCB Risk Assessment, for example a change in residence/domicile, business interests, becoming/ceasing to be deemed as a PEP, etc.

**COMMENTS BOX**
Additional comments regarding answers to this Assessment

DAVID BENGIS CONNECTION

**CERTIFICATION BY THE PERSON COMPLETING THIS RISK ASSESSMENT**
I confirm that I have carried out the Anti-Money Laundering and Countering the Financing of Terrorism Client KYCB in accordance with SGPBH Group Procedures. Furthermore,
I confirm that this Risk Assessment is based on information provided by or on behalf of the Client and I have no reason to doubt its accuracy.

| *K T Osmand* | Kathryn Osmand - Private Banking Assistant | 15.10.12 |
| --- | --- | --- |
| Signature of person completing this Assessment | Name and Job Title | Date |

**CRM CONFIRMATION** - Required where Assessment has not been completed by the CRM who has prime responsibility for this client

| | Anthony Holley - Senior Private Banker | 15.10.12 |
| --- | --- | --- |
| CRM signature | Print name | Date |

**Additional sign-off requirements**
All new High or Higher Risk business must be taken to a New Account Opening Committee/High Risk Committee for acceptance.
Refer to SGPBH SharePoint\Policies & Procedures\Anti-Money Laundering\AML CFT Guidance Note 2

High Risk business must be signed off by a Director of SGH (local policy defines who can sign as a 'Director') AND signed by local MLRO

Adrian Rowland
Authorised Signatory

| High Risk - Director must sign | | 8/11/12 | Director | Date |
| --- | --- | --- | --- | --- |

SG Hambros Bank (Channel Islands) Limited

Taruna Pereira
Compliance Officer

ALSO - This form must be signed by AML Compliance
Olympic Agreement 010 input and WorldCheck search done

SG Hambros Bank (Channel Islands) Limited
AML Compliance signature, name and date

6/11/12

MIDDLE OFFICE

| CHECK/RETURN | AUTHORISED | COMMENTS |
| --- | --- | --- |

| SYNERGY INDEX | Cabinet | CLIENT | Doc Type | KYCC | Doc Date | Client No. |
|---|---|---|---|---|---|---|
| | | | | | | |

## CUSTOMER DUE DILIGENCE - KNOW YOUR CLIENT'S BUSINESS ("KYCB") PROFILE

The purpose of this form is to assist SGPB Hambros & its employees to carry out its responsibilities to deter money laundering.

KYCB data should be completed in full as part of the New Client Acceptance process. However, **this is a 'living' document** and must be updated on an ongoing basis so as to detail the present relationship with and status of our Client. As changes occur, this document must be updated and saved. Whenever updated, **a copy should be printed and scanned into Synergy.**

| Full Name of Company:_ | PEARL INVESTMENTS TRADING LIMITED |
|---|---|

| | |
|---|---|
| 1. Is this a stand-alone Company or part of a group structure? <br> *See footnote below* [1] | Stand-alone Company <br><br> X   Part of a structure   **NOTE:** If part of a structure, you **MUST** attach a structure diagram or provide a full description of the entire relationship. |
| 2. What was the source of introduction of this business? <br> *Another client, a professional firm, response to an advertisement etc* | Introduced by Kevin Gold, Managing Partner of Mishcon De Reya. |
| 3. Why SGPBH & this jurisdiction? <br> *A brief Indication of the rationale behind this account being opened with SGH – why is the business coming to us?* <br> *Provide a separate file note if required* | Through above introduction |
| 4. Full name of the Ultimate Beneficial Owner(s) | Mr David Paul Bengis |
| 5. Has the Ultimate Beneficial Owner been met face to face? <br> *IF YES: when & by whom* <br> *IF NO: explain why not* | Yes on several occasions by Anthony, Tarly and Kathryn – both in London and in Jersey |
| 6. What is/was the Source of Wealth of the Ultimate Beneficial Owner? <br> *SoW - the activities which have generated the total net worth of a person i.e. those activities which have generated a customer's funds and property.* <br> *Information concerning the time frame over which that wealth was generated and the geographical sphere of the activities that have generated the wealth may also be relevant.* <br> *Full details are required – bland terms such as "Sale of Business"; "savings", "Inheritance" or "earned" are not enough and need to be expanded upon, such as "life time savings of Mr X, who was a London lawyer".* <br> *Provide a separate file note if required.* | Accrued Business Profits from Investments and Real Estate |
| 7. How was the SoW verified? <br> *Where appropriate, documentary evidence should be provided supporting the information provided by the Client* <br> *Refer to the Source of Wealth Matrix – available on SGHambros online* | From original documents at time of account opening provided by Mischon De Reya. |

---

[1] This Company is owned (fully or in part) by another Company or Trust; **OR** this Company owns (fully or in part) another Company or Trust; **OR** the Ultimate Beneficial Owner of this Company beneficially owns (fully or in part) another Company or has settled a Trust.

| | |
|---|---|
| 8. What are the Activities of the Company?<br>*See M&As – state, for example, whether company is (to be) an Investment or Trading Company and what its prime activities are (to be)* | Investment Company |
| 9. State the amount of source of the initial funds being remitted to open this new account.<br><br>*State the Amount, the Name of the Remitter, the Bank and Country that will be remitting the initial funds.*<br>*If it is not in the same name as the Client, fully explain the reasons for 3rd party involvement. If securities, state the name the securities are held in and the originating broker details* | Account opened 01.03.02<br>Funds received from Mischon De Reya<br><br>Subsequent funds from Sale of Real Estate and movement from banking and investment relationship at Bank Julius Baer in Zurich (fully documented). |
| 10. What services are being/to be provided by SGPBH?<br>*Fully list the products and service the client requires from SGH. This will help determine the level of KYC information required. If in doubt refer to your MLRO.*<br>*i.e. Services - Bank Account, Credit, Investment and Trust Products – Visa Card, Structured Notes, E-banking* | Banking and Investments<br>Managed Advisory Account run by Tarly Bolla |
| 11. What is the **estimated Financial Activity** of the bank account of the Company?<br>State the amount and frequency of all anticipated client-instigated transactions.<br>**Ignore** transactions such as fees, interest, dividends, fixed rollovers etc. | High Frequency – daily/weekly transactions |

| | | |
|---|---|---|
| **12. Value range of transactions:**<br>*This information will assist in identifying any unusual transactions.*<br><br>**Estimated** value ranges:<br>*To be completed at client take-on.*<br><br>**Actual** value ranges:<br>*To be updated whenever Profile is reviewed. Indicate the value of transactions from the last to the current review* | *Indicate the maximum value of anticipated transactions. Be as accurate as possible - i.e. if you know the only income received is monthly rental income of £10K, put up to £10K.* | |
| | **Incoming Funds** | **Payments out** |
| | Up to:   $10m | Up to:   $1m |
| | **Review period**   From:   May 2012 | To:   October 2012 |
| | **Inward**   Low   £0K | High   $9,925,000.00 |
| | **Outward**   Low   $5,156.00 | High   $100,055.50 |

| | |
|---|---|
| 13. Detail any anticipated cross-border financial transactions (payments and receipts)<br>*Detail the amount, beneficiary/remitter, country and purpose of any payments/receipts to/from **outside the jurisdiction in which the account is to be maintained**.* | NONE |

| 14. What is, or is likely to be, the Company's annual income and how is it/will it be derived? | $500k - income optimisation strategy | | | |
|---|---|---|---|---|
| 15. Annual Turnover (GBP equiv): | Last year | PORTFOLIO BASED | This year (estimated) | PORTFOLIO BASED |
| 16. Name & address of any other Bankers to the Company | Cantrade Bank Zurich via Mischon De Reya Client Account<br>Natwest Bloomsbury Parr, London | | | |

**Q17: Private Companies ONLY**

List ALL Directors (where not SGHTC), Shareholders & Controllers and show % stake held.
*If there are more than 4 parties, continue on a separate sheet, using the same format as above.*

| Position(s) Held | Full Name | Residential Address | Stake Held (%) |
|---|---|---|---|
| Directors | Inwealth Directors | Charles House<br>108-110 Finchley Road<br>London United Kingdom<br>NW3 5JJ | 0% |
| Beneficial Owner | Mr David Bengis | 7 Perceval Avenue<br>London<br>United Kingdom<br>NW3 4PY | 100% |
| | | | |
| | | | |

**Q18: All companies**

Connected accounts - list all other accounts held within the SG Hambros Group that are connected to this Company
*\* If there are more than 4 connected accounts, continue on a separate sheet, using the same format as above.*

| SGH Jurisdiction | Name of connected Client | Client No. | Relationship to this Client | Olympic RE code |
|---|---|---|---|---|
| Jersey | Pearl Investment Trading Ltd – Loan | 394122 | Same Beneficial Owner | 013 |
| Jersey | Pearl Investment Trading Ltd – Eur Geared | 439290 | Same Beneficial Owner | 013 |
| Jersey | Pearl Investment Trading Ltd – USD Geared 1 | 439282 | Same Beneficial Owner | 013 |
| Jersey | Pearl Investment Trading Ltd – USD Geared Loan 1 | 440744 | Same Beneficial Owner | 013 |
| Jersey | Pearl Investment Trading Ltd – GBP Geared 2 | 439304 | Same Beneficial Owner | 013 |
| Jersey | Pearl Investment Trading Ltd – GBP Geared Loan 2 | 463213 | Same Beneficial Owner | 013 |
| | | | | |
| | | | | |
| | | | | |

19. Any other pertinent information
Account introduced by Kevin Gold, Managing Partner of Mishcon De Reya ( A1 status ). Kevin is also a very close

Account introduced by Kevin Gold, Managing Partner of Mishcon De Reya ( A1 status ). Kevin is also a very close friend and looks after Arnie personaly. Arnie Bengis, the benefial owner is South African and aquired his wealth via the export of fish (Lobster) initialy from South Africa and thereafter in/from America & Portugal. Each operation trades under different names, in America = Ice Brand and in Europe/Africa = House Bay fishing. A substantial Fixed Interest portfolio is held with Cantrade in Zurich and it is from this source that the funds have arrived. The portfolio in Zurich is geared towards Emerging Market Debt. With SGH he is looking to take a more conservative stance so reducing his risk/volatility whilst providing an Anglo-Saxon approach.Corporate directors are Trident in BVI.

During latter part of 2003, Arnie Bengis (underlying) was arrested in the USA on charges relating to overfishing in South Africa. Was later released on bail and following his trial in 2004, was given a custodial sentence of 3 years. During court case, we were requested by the Directors of SGH to forward funds to Arnie's legal team in the USA as well as Mishcon to cover fees and fine's. Directors of SGH have been fully appraised of situation.

TH met on numerous occasions in London during 2002/2003.

2008- Meet With David Bengis on a regular basis. Arnie was released in 2007 and will leave USA in 2009. The loan was recently fully drawn to increase the portfolio with high yielding US paper and one of the Banks Structured products. Currently in discussion to leverage a $5m cash injection expected 2nd half 2008.

2009 - In disussions to buy certain assets from BJB which will be placed into Pearl 2. Credit approval received (secured against Pearl 381950) which should result in additional AUM's of $1.4M (market value) $5m (nominal value).

TH met with David Bengis on 18th June 09 @ 1.30pm. They discussed the new relationship; Pearl 2; which has been the recipient of a number of bonds purchased from Bank Julius Baer (BJB) and secured against a new credit line with security taken against Pearl. Market value of $1.7m against a nominal value of $5.6m which reflects the 'toxicity' of the new portfolio. David believes that a number of the Bonds may well default however most are continuing to pay their dividends with cashflow being $463k pa. The remit is for all and particularly Chris (Advisory Manager) and David to keep a watchful eye with the goal of re investing the cashflow (both income and redemptions) into alternate quality issues which will diversify and ultimately reduce the risks associated.

The main portfolio (Pearl) was also reviewed and it was decided to take advantage of the remaining credit facility to top up a number of holdings and maximise the arbitrage channel between the coupon level (ave 6%) and the lending rate (base + 75bp's). The facility to buy Pearl 2 was arranged at Libor + 100 bp's.

We thereafter reviewed the family accounts; David, Lana, Gabi & Reeva (for which David has ULA's) and it was agreed to use some of the cash in Reeva's portfolio to purchase additional USD bonds to lock into an acceptable income stream.

David confirmed that Mishcon de Reya (lawyers/advisors to the family) will be remitting a further $2m to David which he would like to invest. A further discussion should be had once the proceeds are received. David also advised that the family structure is in the process of being reviewed which will see the creation of a new family trust for which the sole beneficiaries will be him and his two sisters, Lana & Gabi. Underneath this will remain a number of holding/investment vehicles including those know to SGH; being Pearl, Armine, Biema & Evolution.

November 09

Arranged to meet up with DB in London as his father AB was in town.

AB spending time between USA, London, Israel and SA and uncertain as to where he will eventually 'lay his hat' albeit enjoying the travel at this time. AB looked in good health as been a while since we last met.

CC reviewed Pearl and Peal 2 investment portfolio's which had gone from strength to strength in 2009. The investment strategy of the family was re confirmed as using high yielding, investment grade where possible corporate paper with the goal of using the cashflow to re invest and/or cover any borrowing costs if leverage in play at the time. AB confirmed too much reliance had been paid on leverage during 2006 - 2009 and was keen to reduce and get back to basics.

All equity positions should be sold over the following months with CC tasked to review and recommend exit strategy to obtain best value. Funds to be re invested into the tried and tested approach above. Furthermore an element of house keeping/profit taking on the bond side was warranted with instructions received to sell the Morgan Stanley paper in Pearl and Tristan Oil in Pearl 2 - CC to use suitable limit prices to exit.

The subject of the Julius Baer (JB) portfolio came up as it is clear that the family intend to exit all ties. Current position is USD 56M Bonds, USD 12.5M cash and borrowing of USD 41M (LTV 60%). If the cash were to be used to repay debt then the LTV would fall to 50%. TH had embryonically discussed with Chris Whur prior to departure who on a credit perspective had confirmed figures were within tolerance for SGH to consider taking on the portfolio/debt. Naturally SGH would require more in depth analysis of the Bond portfolio including average and specific credit rating, duration, country risk etc. It should be noted that the family are seriously contemplating a more radical overhaul which would see the borrowing reduce to c USD10M level.it is expected that this exercise will be carried out during Qtr 4 with a fresh start Qtr 1 2010.

AB/DB wished to understand whether SGH would have the capability to manage and CC advised yes on the basis of tapping into DB's emerging market bond guru at Pembroke Capital in London.

My feeling is that AB/DB will split the JB portfolio 50/50 and place with two houses to gain diversity. A new relationship has recently been established with Bank Hapoalim in London/CI.

Thereafter we wondered over to Shepherd Market and enjoyed lunch at Restaurant Iran.

**2010** - **In regular contact with David Bengis. David currently spending a lot of his time assisting to transfer a portfolio from Julius Bar to ourselves in the name of Nashglobe Business SA. It is now in the final stage , albeit a few problems encountered with JB re authority to sign over the account, agreements... In the next few days we should be at the point where we can receive the stocks in against payment. Account runs in line with expected activity.**

**February 2010**

**Overview**

**Nashglobe**

| | | | |
|---|---|---|---|
| **Portfolio** | - | **$36M** | **Portfolio rec'd Jan 2010 from BjB Zurich** |
| | | estimated income $2.5M pa | |
| **Loan** | - | **$11.2M** | |

**Pearl 1**

| | | | |
|---|---|---|---|
| **Portfolio** | - | **$9.8M -** | **2009 performance + 41.41%** |
| | | estimated income $670K pa | |
| **Loan** | - | **$2.65M** | |

**Pearl 2**

| | | | | |
|---|---|---|---|---|
| **Portfolio** | - | **$2.89M** | - | **2009 performance + 116.98%** |

estimated income $292K pa

| | | | | |
|---|---|---|---|---|
| Loan | - | $1.39M | - | Secured against Pearl 1 |
| D Bengis LDN | - | J1M | - | Immigration investment maturing Dec 2011 |
| D Bengis JSY | - | J30k | | |
| Reva Goldblum | - | $1.3M | - | Mum |
| Gabi Bengis | - | $107K | - | Sister |
| Lana Rubstein | - | $35K | - | Sister |

Following the successful capture of the Nashglobe portfolio and loan from BJB in Zurich during January, CC and I visited DB to review the portfolio and associated accounts which form part of the 'Bengis relationship'.

After meeting at the Hotel, CC, DB & TH went on to Da Corradi in Shepherd Market for a breakfast meeting. DB was pleased that the process from BJB to SGH had gone through smoothly after a number of initial 'challenges' and was relieved to be finally away from BJB with whom the family are still involved in litigation following the forced liquidation of part of the portfolio back in late 2008/early 2009. CC & DB went through the Nashglobe portfolio line by line, highlighting a number of issues to be sold, others to top up and new positions to take as the portfolio had been effectively in limbo for some months. CC phoned the orders through to Damien Maltwood which generated some $10k in trading commission (agreed bespoke tariff of 0.25%).

We then collectively reviewed Pearl 1 & 2 which had both enjoyed stellar years. it should be noted that Pearl 2 has a more 'toxic' flavour so volatility will be the name of the game; albeit all issues continue to pay coupons in time which is encouraging. For this reason, P 2 is omitted re security for loans.

P 1 & P 2 loans are set to roll up debit interest whereas the Nashglobe portfolio is set up to distribute USD income to the loan account, which over time will reduce indebtedness considerably

Business potential

1.      David is currently renting a hose in Belsize park for c J10k per month. He has decided to purchase a properly, namely 7 Perceval Avenue for a consideration of J3.825M. SGH had provisionally provided approval to finance (Chris Whur & Mike Allen) at indicative terms/pricing of :-

| | | | | |
|---|---|---|---|---|
| • 1st charge over property + 2% re property | - | (LTV 60%0 | - | J2,295M Libor |
| • Increase Nashglobe facility + 1% re portfolio | - | | - | J1,530 Libor |
| • 0.25% arrangement fee | | | | |

There was initially uncertainty as to whose name the property would be purchased and the currency however after guidance from Andrew Saville at Mishcon de Reya (family lawyers)

**it has been decided to structure the borrowing in David's name and in GBP. Furthermore**

- **J8K pm repayment to be made by DB**
- **J1M+ capital repayment from Immigration investment upon maturity in Dec 2011.**

**Mishcon will be acting for DB and completion is expected end of April.**

**2. David then took CC and I to meet with his new Trustees - InTrust who are based at 38 Wigmore Street and were formed following an MBO from Levy Gee some 7/8 years back.The Structure will be administered out of their Geneva office and overseen/managed by Karine Lebocey. The family have decided to move from First Advisory in Liechtenstein for a number of reasons including the ongoing issue with BJB, jurisdictional challenges in Liech and lack of service.I discussed the requirements with Karine re the change over and agreed to drop her an email.**

**In addition to Karine, I also met up with Irene Potter who is a Barrister/Director with the goal of establishing business flow opportunities.**

Type of contact:
e.g. meeting, telephone          Meeting          Date: 25th May 2010  Time: 11am
Client: David Bengis and associated entities
Risk profile:  (if applicable)   Aggressive

If risk profile has changed a new WS. MUST BE COMPLETED and document the reasons for change and required actions regarding client holdings below in "Investment Needs".

Attendees:  (if applicable)      David Bengis (DB) Tony Holley (TH) & Chris Chambers (CC)
Place:  (if applicable) 6 Wychombe Studios, Belsize Park (DB residential home - rented)

1.      Purpose of Contact:

        Investment review
Structure review
2.      Investment Needs
N.B. Before giving Investment advice, has the RM checked with the client for any changes in customer's circumstances and/or investment preferences that could impact the advice given?
0YES  0 NO (check as appropriate)
CC manages family assets (Pearl & Nashglobe) via Advisory managed mandates.
DB is nominated Investment Adviser
Investment rationale is cash/dividend flow via a diverse spread of investment and junk debt.
CC reviewed portfolio's which had enjoyed a tremendous 2009 and 2010 ytd
3.      Service Requirements:
Include any comments / feedback on service from client re TCF

        DB fully appreciates our offering and ethos, hence recent move of substantial assets from BJB to SGH.
4.      Cross-sell Opportunities:

e.g. does the client have a card,
fiduciary needs etc.   We are in process of drawing down a loan of £4.2m i.n.o Evolution to assist DB purchase a UK property in Belsize park.
Security being 1st charge on property and guarantee from Pearl
5.      Other

(e.g. Competitive Activity):

6.      Business Update:

DB & family in litigation with BJB re mismanagement of portfolio whilst in Zurich. Claim is for USD 12M although expect to negotiate/settle out of court.
Essentially BJB allowed gearing of 9 x and then pulled plug without any supporting documentation or consultation

7.      Personal and Family Update:

Noah (daughter) is 10 and attends American School in London

July 2010

In regular contact with Mr David Bengis, by e-mail, fax, phone and in person. Mr David Bengis visited the island in April 2010 to attend our Private Client Dinner. He stayed at the Atlantique Hotel and Tony Holley had a meeting with him the following morning. Chris Chambers looks after the Pearl Accounts and regulary meets with David. Recently carried out some forward FX contracts. Account runs in line with expected activity.

September 2010


Type of contact:
e.g. meeting, telephone          Meeting          Date: 23rd September 2010     Time: 12
Client: Pearl Investments/David Bengis
Risk profile: (if applicable)  Aggressive

If risk profile has changed a new WS. MUST BE COMPLETED and document the reasons for change and required actions regarding client holdings below in "Investment Needs".

Attendees: (if applicable)     David Bengis (DB), Chris Chambers (CC), Tarly Bolla (TB) & Tony Holley (TH)
Place: (if applicable) Venetti, 10 Wigmore St

1.      Purpose of Contact:

Investment review/update

2.      Investment Needs
N.B. Before giving Investment advice, has the RM checked with the client for any changes in customer's circumstances and/or investment preferences that could impact the advice given?
0YES  0 NO (check as appropriate)
381950    -  Managed Advisory  - +15.64%  (average yield 6.75%)

3.      Service Requirements:
Include any comments / feedback on service from client re TCF

Arrange for Evolution Partners (207330) to receive monthly statemets

4.      Cross-sell Opportunities:

e.g. does the client have a card,
fiduciary needs etc.    Phoenix note idea put forward in view of high income thematic. DB to consider

5.      Other
(e.g. Competitive Activity):

DB advised that BHI (Bank Hapoalim Int) in Jersey is to close so is considering a new relationship in Switzerland to act as the 2nd Investment Manager/Banker to the family. Rationale being diversity of institution/strategy and legal system.

In the interim SGH may well receive further AUM's to 'baby sit'.

6.      Business Update:

DB unsurprisingly happy with performance which has boosted the asset value to $47.2M. Investment rationale remains, namely high yield via the corporate bond arena. Predominant exposure is toward emerging market although portfolio recently has been de risked via inclusion of higher grade paper such as HSBC 5% 2020 for which $1M was invested.

Income of $3.2m expected from the portfolio which is used to service debt (gearing) and then re invest back into the portfolio.
DB wished to say good bye to CC as the relationship has gone from strength to strength over the last 8 years or so; so much so that they should be considered friends. CC explained reasons for his departure and then both TH & CC introduced TB as the interim contact until a formal replacement is found. TH confirmed he would continue to play an active part in the overall relationship.

DB confirmed to TB that it his ultimate decision as to what to invest/sell etc albeit would appreciate frequent and regular dialogue as to new issues/ideas etc.

TH provided DB with an overview of the LTV of the portfolio and highlighted those holdings for which no LTV is available. DB is keen to consider further gearing so invariably will look to improve the quality of the overall portfolio (as evidenced above with HSBC) as a means of achieving this goal.

7.      Personal and Family Update:

Arnie (dad) to spend more time in the UK. Currently going through a divorce in the US.
DB to hire a villa on Isle de Ray during Summer of next year and extended an invite to TH to visit.

Type of contact:
e.g. meeting, telephone      Meeting      Date: 23rd November 2010     Time: 1.30
Client: Pearl (381950)
Risk profile: (if applicable)     Aggressive

If risk profile has changed a new WS. MUST BE COMPLETED and document the reasons for change and required actions regarding client holdings below in "Investment Needs".

Attendees: (if applicable)      Arnie Bengis (AB), David Bengis (DB), Tarly Bolla (TB) & Tony Holley (TH)
Place: (if applicable) Hilton, Half Moon St – Mayfair followed by lunch @ The Market Brasserie, Shepherd Market.

Purpose of Contact:

Investment review

Investment Needs
N.B. Before giving Investment advice, has the RM checked with the client for any changes in customer's circumstances and/or investment preferences that could impact the advice given?
0YES  0 NO (check as appropriate)
Portfolio – USD 48M +15.42% ytd
Borrowing – USD 12.3M, EUR 1M & GBP 4.2M

Service Requirements:
Include any comments / feedback on service from client re TCF

Cross-sell Opportunities:

e.g. does the client have a card,
fiduciary needs etc.
Other
(e.g. Competitive Activity):

Following departure of Chris Chambers to ABN and imminent closure of BHI in Jersey, family have decided to move assets from BHI to ABN.

Both DB and AB confirmed portfolio at SGH is not under pressure as family always wish to retain two managers to diversify risk
Business Update:

Portfolio growth of $5M ytd with an estimated income of $3.4M pa. Unsurprisingly both AB & DB happy.

TH provided DB & AB with a comprehensive and up to date LTV/country risk review which has seen the ratio increase from 45% to 49.78% due to a de risking of the portfolio over the past 6 months or so.

TB took the opportunity to discuss the lack of new issues with an acceptable yield, for example we are seeing sub investment grade paper yielding 5%. It was collectively felt that now is not the time to chase new issues, and concentrate on de leveraging the main portfolio. At some stage when yields narrow the reverse will be true.

With the later AB & DB enquired about our leverage capability. Essentially they would like to take up 3 new line's of GBP, USD & EUR 1M each (either new money or existing holdings) and leverage up to 3-4 times which would equate to a pot of 4 – 5 m per currency. This will have the effect of reducing the leverage in the main portfolio and taking a more concentrated position with a few specific plays.

I confirmed that leverage is an area of expertise and the multiple would come down to a number of factors, namely credit rating, length of maturity and country risk i.e. the greater the quality the higher the leverage and vice versa. DB to revert with more concrete ideas and TH to speak with Credit to obtain guidance/matrix.

Personal and Family Update:

AB in good health renting a house in Belsize Park. Likely to spend 3 months in UK plus time in US and SA
Follow-up Actions:


Obtain matrix/gearing guidance from Credit

July 2011

In regular contact with David Bengis and Karine Lebocey by telephone, fax and e-mail. Account continues to run in line with expected activity. David recently introduced his friend, Mr Avin Lieberman to SG. Mr Lieberman has opened an account and we are in the process of opening the portfolio account to start trading.

Sept 2011


Type of contact:
e.g. meeting, telephone          Meeting          Date: 6th September 2011          Time: 12.30 pm
Client: Pearl Investments
Risk profile: (if applicable)    Balanced/high (3/4)

If risk profile has changed a new WS. MUST BE COMPLETED and document the reasons for change and required actions regarding client holdings below in "Investment Needs".

Attendees: (if applicable)    Arnie Bengis (AB) David Bengis (DB) Tarly Bolla (TB) & Tony Holley (TH)
Place: (if applicable) Home House Club, Portman Sq

Purpose of Contact:


Catch up, investment review + new discuss gearing strategy
Investment Needs
N.B. Before giving Investment advice, has the RM checked with the client for any changes in customer's circumstances and/or investment preferences that could impact the advice given?
0YES  0 NO (check as appropriate)
Pearl portfolio          + 4.22%
Pearl Geared portfolio +  5.08%

TB & TH invited to meet AB & DB during AB's visit to UK. Meeting and lunch held at DB's club in Portman Sq.

TB reviewed both portfolio's (run on advisory managed basis) and both AB/DB happy with performance and make up.

Initial gearing strategy is approaching saturation with $8m of the $9M line already drawn. Recently $5M fixed for 2 years to take advantage of low rates and manage interest rate risk. Remaining one month Libor.

Agreement signed off in Paris to commence Gearing 2, albeit this time at an increased level of $13.5M which when fully drawn will result in a portfolio of c. $20M. Strategy will be seeded via fresh cash

injection (see bus update below). Discussion held with regard to how to populate and both AB/DB keen to consider a GBP bias to match spending liability. DB & TB to review GBP corporate issues.
Service Requirements:
Include any comments / feedback on service from client re TCF

AB reiterated comfort in dealing with TH/SGH as believed boutique/relationship feel of SGH backed by SG parent is an ideal fit
Cross-sell Opportunities:

e.g. does the client have a card,
fiduciary needs etc.    Infinate card – details sent
Other
(e.g. Competitive Activity):

AB & DB advised they are considering legal action against their previous Trustee in view of breakdown in 'duty of care'. As the structure at the heart of their affairs it is a Jersey Trust they wished to learn of the benefits of considering action via the Jersey Court. I agreed to make enquiry and revert.

TH subsequently spoke with Steve Mielkeljohn of Ogier who advised this may well be beneficial although the challenge may well be in enforcing any positive outcome in Liechtenstein where the previous Trustees are based. Way forward would be an initial discussion between Jersey lawyer and family to decide whether worthwhile.

TH updated DB who is to consider next step
Business Update:

AB/DB decided to sell all remaining US investments (predominantly real estate) with first tranche due October.
Personal and Family Update:

AB rented a beach house in Bermuda for month of August (cost - $56k). A number of family and friends visited during this period.
Follow-up Actions:

Circulation to:
          Copies to:
Trust    0
Credit  0
Financial Planning      0
Investment Management/Advisory Team       0
Operations       0
Private Banking

Oct 2011

In regular contact with David Bengis by telephone, fax and e-mail.  Gearing 2 signed off by Paris for $13.5million. Sale of Property in Florida over Biema Holdings for $1.2M – funds due in shortly.

## Type of Document: Meeting

| | |
|---|---|
| **Organizer** | Anthony Holley |
| **Required attendee** | Pearl Inv Trading Ltd |
| **Contact Note** | Contact Note |
| **Purpose of contact** | Update/credit review |
| **Category** | Regular Review |
| **Location** | Home House Club; Portman Sq |
| **Start Time** | 05/10/2012 13:00 |
| **End Time** | 05/10/2012 16:30 |
| **All Day Event** | No |
| **Description** | I arranged to catch up with David for a review and consider the Credit requirements for the coming 12 months. |
| **Investment Needs** | Yes |
| **Investment Needs** | I reviewed all of the portfolio's. David remains extremely happy with the current strategy; so much so that earlier in the year he directed a further $10m our way.<br>The risk profile and investment goal remain un altered. Tarly Bolla is the nominated Investment Manager and I am hands on with ideas which David confirmed works well as able to bring/bounce ideas.<br>David has purchased 4 x Corporate Bonus Note's (SP) this year and wishes to explore further. David found his meeting with Jeremie V of MKS extremely useful, which I arranged earlier in the year. |
| **Service Requirements** | Prior to meeting up with David; I sat down with Mike Allen (FORCE) to review the existing credit facilities viz a viz renewal/pricing. Current facilities total c.$45M and bar $4m linked to property are portfolio backed and/or portfolio geared. Portfolio's total $80M+. Main portfolio backed facility and portfolio geared (x2) are charged @ Libor + 1 and Property Libor + 1.5%.<br><br>NBI for the relationship is $600k+ pa and growing 10/20% pa. Liquidity cost in USD is 1.75% and 1.44% in GBP.<br><br>Goal was to negotiate an increase to the credit margin without jeopardising the wider relationship; hence wanted Mike's steerage, guidance and ultimately a back stop. After discussing, Mike advised, that worst case, we would make a case to argue for continuance as is, in view of the size of AUM/NBI and our understanfing within the wider market place that the cost for this type of portfolio backed/geared strategy is c.1%. This should be used should I feel continuance of said dialogue would place the relationship under pressure. It was also noted that the family is multi Banked and enjoys bespoke/tight terms across relationships.<br><br>During our meet, I raised the subject of liquidity and pressure on margin. Whilst David was understanding, he never the less mentioned there are a number of Banks (see below) who would be delighted to take on the business (which I do not doubt). This said and after serious and lengthy discussion, he confirmed he would not bulk at a 25 bp's increase to the main borrowing line. He would not entertain re geared strategies.<br><br>I advised Mike of the outcome post meeting (email 5/10@ 16.50) who replied in an email on the same day (17.41) 'well done, i think this is a decent result'. |
| **Cross Sell Opportunities** | As the main portfolio has increased to c.$50M, David wishes to extend the borrowing line to $25m (subject to suitable LTV - we apply 50% at present).<br>At the same time, David wishes to increase the borrowing line linked to Geared 2 from $7.5m to $15m. He understands he will need to inject fresh capital to optimise the extension; although wished the increase to be in place so ready.<br><br>David asked that we look to price up a GBP corporate bonus note; concentrating on utility/telecoms names. |
| **Other (e.g. Competitive Activity)** | The family is in discussion with a number of Banks to take over a mandate he has with a competitor on the Island. David has become increasingly frustrated by there perceived lack of flexibility, proactiveness and ability to offer new ideas. The two Banks in question are Deutche & Lombard Odier. Both have offered terms tighter than we do at present; namely admin/advice fee of 15 bp's (we are 25 bp's) with credit at a flat 1% + Libor. |
| **Advise 1** | Mike Allen |

| | |
|---|---|
| **Advise 2** | Kathryn Osmand |
| **Advise 3** | Tarly Bolla |
| **Regarding** | Pearl Inv Trading Ltd |
| **Owner** | Anthony Holley |
| **Business Unit** | Channel islands |

| KYCB Profile updates – record of updates to the original Profile | | |
|---|---|---|
| **Date** | **Updated by** | **Record of significant changes made** |
| 31.10.12 | Kathryn Osmand | Account continues to run in line with expected activity.  Account managed by Tarly Bolla.  In regular contact with David Bengis by phone and e-mail.  Last contact was 11.10.12 by e-mail at 13.24pm.  Last meeting was 05.10.12 @ 13.00 with David Bengis and Anthony Holley at Home House Club, Portman Square, London.   See Meeting note attached. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

*Forward this form and all required attachments to Middle Office*

**Middle Office/Operations** – Olympic input sign-off for KYC renewals only. (Initial KYC risk codes are input from account opening forms).

Arrange for relevant 'AN' code to be updated in Olympic with the next review date shown on the Risk Assessment Form.

**Input by**

| Print Name | Signature | Date |
|---|---|---|
| PAULA APPERLEY | P Apperley | 6/11/12 |
| Print Name | Signature | Date |

# PEARL INVESTMENTS TRADING LIMITED
## P. O. Box 659
### International Trust Building
### Wickhams Cay, Road Town
### Tortola, British Virgin Islands
Telephone No: 284 494 3215
Telefax No: 284 494 3216

**Our Ref: C/19222**
**BY TELEFAX (01534) 815560**

23 May, 2003

Mr. A Holley
SG Hambros Bank Limited
13 Broad Street
St. Helier
Jersey
JE4 8PR

Dear Mr. Holley,

**Re: Line of Credit for US$2 million re Icebrand Seafoods Inc.**

Further to your line of credit granted by your bank to the Company, please accept this letter as your instruction to debit the account up to a cumulative figure of US$2,000,000.00 (United States Dollars Two Million) on the basis of signed instructions from David Bengis of Icebrand Seafoods Inc.

We would further request that we are advised in writing of each transaction for our records.

Yours faithfully,
For and on behalf of
Pearl Investments Trading Limited



I.T.G Directors (T&C) Limited                    Vulcan Limited



Our Reference: 19222

**VIA DHL**

**23 May 2003**

Mr. A Holley
SG Hambros Bank Limited
13 Broad Street
St Helier
Jersey
JE4 8PR

Ansbacher (BVI) Limited
PO Box 659
International Trust Building
Road Town Tortola
BRITISH VIRGIN ISLANDS
Telephone +1 284 494 3215
Facsimile +1 284 494 3216
gareth.caldwell@ansbacher.vg

Dear Mr. Holley,

**Re:     Pearl Investments Trading Limited**

Please find enclosed for your further attention documentation in connection with the loan facility for US$2 million for Pearl Investments Trading Limited.

I trust all is in order.

Kind regards,

Yours sincerely
For and on behalf of
ANSBACHER (BVI) LIMITED

Gareth Caldwell
**Senior Trust Officer**

Enc.

**SG**

PRIVATE BANKING

UNLIMITED LETTER OF AUTHORITY

**TO: SG Hambros Bank & Trust (Jersey) Limited**
P.O. Box 78
13 Broad Street
St. Helier
Jersey
Channel Islands
JE4 8PR

381950

Name of Account    PEARL INVESTMENT TRADING LTD

I/We have authorised    ARNIE BENGIS

(specimens of whose signatures appear below)

solely/jointly/and any*        of them in my/our/our firm's* name.

(1) ~~To withdraw monies per procuration on my/our/our firm's Banking Accounts.~~

(2) ~~To withdraw anything held by you by way of security or for safe custody, collection or any other purpose whatsoever on my/our* account.~~

(3) ~~From time to time to certify the correctness of any such account.~~

(4) ~~Generally to act in all matters of business with you.~~

(5) ~~And I/We* request you to act on the above instructions and in particular to pay and honour all such cheques, bills or notes notwithstanding that any such payment may cause my/our* said account to be overdrawn or may increase an existing overdraft.~~

(6) TO PROVIDE INTERNAL INVESTMENT DECISIONS ONLY

The above shall continue until I/We/one of us* shall give you notice in writing to the contrary.

Date    15/3/02

(Signature of Account Holder(s))

**NAME(S) & SIGNATURE(S) OF PERSON(S) AUTHORISED TO SIGN**

Name in Full             Specimen Signature

ARNIE BENGIS    will sign _____

_____    will sign _____

*delete as appropriate

PER / AUT / 381950    12/12/06
                      Pg x2

# PEARL INVESTMENTS TRADING LTD

Korrespondenzadresse / Adresse postale / Correspondence address:
Aeulestrasse 74
Postfach 461
9490 Vaduz
Fürstentum Liechtenstein

Telefon +423 – 236 04 78
Telefax +423 – 236 04 05

| Übermittlung ohne Begleitbrief / Sans lettre d'accompagnement / Without covering letter |

**BY MAIL AND FAX 0044 1534 815 640**

**SG Hambros Bank (Channel Islands) Limited**
**Mr. Philip Chambers**
**P.O. Box 78**
**SG Hambros House**
**18 Esplanade**
**St. Helier, Jersey JE4 8PR**



RECEIVED
11 NOV 2006

Vaduz, 5 December 2006 hil

| Betrifft / Concerne / Reference |

**Pear Investments Trading Ltd / Account no. 381950**
Mandats Nr. 95197 ACK/hil

| Sie erhalten beigeschlossen / En annexe vous trouverez / Enclosed please find |

- Unlimited Letter of Authority

| | | |
|---|---|---|
| ☐ zur Unterschrift und Rücksendung / à signer et à nous retourner / to sign and to return | ☐ mit der Bitte um Stellungnahme / pour avis / with the request for your comment |
| X in Erledigung Ihres Schreibens vom / suite à votre lettre du /        28.11.2006 according to your letter of | ☐ Wunschgemäss unterzeichnet retour / de retour, signé(s) selon vos instructions / signed and returned as requested |
| ☐ zur Kenntnisnahme / pour votre information / for your information | ☐ Mit bestem Dank zurück / de retour, avec nos remerciements / returned with thanks |
| ☐ für Ihre Akten / pour vos dossiers / for your files | ☐ |

Mit freundlichen Grüssen
Avec les compliments de
With compliments

Hilti Erika

**TO:  SG Hambros Bank (Channel Islands) Limited**
P.O. Box 78
SG Hambros House
18 Esplanade
St Helier
Jersey
Channel Islands
JE4 8PR

Name of Account _____ Pearl Investments Trading Ltd

I / We have authorised _____ David Bengis

(specimens of whose signatures appear below)

solely/jointly/and any* of them in my/our/our firm's* name.

(1) To withdraw monies per procuration on my/our/our firm's* Banking Accounts.

(2) To withdraw anything held by you by way of security or for safe custody, collection or any other purpose whatsoever on my/our* account.

(3) From time to time to certify the correctness of any such account.

(4) Generally to act in all matters of business with you.

(5) And I/We* request you to act on the above instructions and in particular to pay and honour all such cheques, bills or notes notwithstanding that any such payment may cause my/our* said account(s) to be overdrawn or may increase an existing overdraft.

The above shall continue until I/We/one of us* shall give you notice in writing to the contrary.

Date  15 November 2006          Pearl Investments Trading Ltd

(Signature of Account Holder(s))

NAME(S) & SIGNATURE(S) OF PERSON(S) AUTHORISED TO SIGN

Name in Full                              Specimen Signature

David Bengis                will sign

_____ will sign _____

*delete as appropriate

PER/AUT/ 381950.

## PEARL INVESTMENTS TRADING LIMITED

Aeulestrasse 74
Postfach 461
9490 Vaduz
Fürstentum Liechtenstein



Telefon +423 – 236 04 78
Telefax +423 – 236 04 05

<u>BY FAX (+441534815640) & MAIL</u>

Mr Philip Chambers
SG Hambros Bank (Channel Islands) Limited
P.O. Box 78
SG Hambros House
18 Esplanade
St. Helier, Jersey JE4 8PR
Channel Islands

Vaduz, 11 December 2006    hil/wej

**Account No. 381 950**
Mandate No. 95197 ACK/hil

Dear Mr Chambers

Reference is made to our instruction dated 30 November 2006. We would like to clarify the meaning of our instruction and would be grateful if you could sell all US securities which are subject to the US withholding tax. Furthermore, please note that the account should be blocked for investments in US securities which are subject to the US withholding tax.

In addition please find attached the amended ULA as mentioned in your email of 07 December 2006.

We thank you for your co-operation and remain,

Yours sincerely,

**PEARL INVESTMENTS TRADING LIMITED**

lic.oec.HSG Iwan J. Ackermann

## TO: SG Hambros Bank (Channel Islands) Limited
P.O. Box 78
SG Hambros House
18 Esplanade
St Helier
Jersey
Channel Islands
JE4 8PR

Name of Account ___ Pearl Investments Trading Ltd

I / We have authorised ___ David Bengis

(specimens of whose signatures appear below)

solely/jointly/and any* ................................................ of them in my/our/our firm's* name.

(1) To withdraw monies per procuration on my/our/our firm's* Banking Accounts.

(2) To withdraw anything held by you by way of security or for safe custody, collection or any other purpose whatsoever on my/our* account.

XXX (3) From time to time to certify the correctness of any such account.

(4) Generally to act in all matters of business with you.

(5) And I/We* request you to act on the above instructions and in particular to pay and honour all such cheques, bills or notes notwithstanding that any such payment may cause my/our* said account(s) to be overdrawn or may increase an existing overdraft.

The above shall continue until I/We/one of us* shall give you notice in writing to the contrary.

Date 15 November 2006     Pearl Investments Trading Ltd

(Signature of Account Holder(s))

NAME(S) & SIGNATURE(S) OF PERSON(S) AUTHORISED TO SIGN

Name in Full             Specimen Signature

David Bengis        will sign

                  will sign

*delete as appropriate

XXX: To the extent that he shall be authorised to arrange for investments and disinvestments up to the net portfolio value. Transfers out of the account shall expressly be excluded.

W/GOLDMINE/WORD/MANDATES/ULA/ 01/01/02

# PEARL INVESTMENTS TRADING LIMITED
**P.O. Box 659**
**International Trust Building, Wickhams Cay**
**Road Town, Tortola, British Virgin Islands**
**Telephone No: 284 494 3215**
**Telefax No:      284 494 3216**

Our Ref:  C/19222
By Fax No. 011 44 1534 815 560
& By Post

20 August 2002

Mrs. Donna Gouveia
SG Hambros Bank & Trust (Jersey) Limited
PO Box 78
13 Broad Street
St. Helier, Jersey
Channel Islands  JE4 8PR

REC
29 AUG 2002

## BY FAX:  44 1634 815 418 AND BY POST

Dear Mrs. Gouveia,

**PEARL INVESTMENTS TRADING LIMITED**

We write to request the transfer of US$1,000,000.00 from the above account to the account known as Regent Enterprises Development Limited, held with your bank.   We further confirm that we hereby give permission for Mr. Arnold Maurice Bengis to draw funds from the aforementioned account, up to but no more than one million dollars, from time to time and as instructed by him.

Yours sincerely,
For and on behalf of
**PEARL INVESTMENTS TRADING LIMITED**

Vulcan Limited
Diretor

I.T.G. Directors (T&C) Limited
Director

**SG**

PRIVATE BANKING

UNLIMITED LETTER OF AUTHORITY

**TO: SG Hambros Bank & Trust (Jersey) Limited**
P.O. Box 78
13 Broad Street
St. Helier
Jersey
Channel Islands
JE4 8PR

381950

Name of Account    PEARL INVESTMENT TRADING LTD

I/We have authorised    ARNIE BANGIS

(specimens of whose signatures appear below)

solely/jointly/and any*          of them in my/our/our firm's* name.

(1) ~~To withdraw monies per procuration on my/our firm's Banking Accounts~~

(2) ~~To withdraw anything held by you by way of security or for safe custody, collection or any other purpose whatsoever on my/our* account~~

(3) ~~From time to time to certify the correctness of any such account~~

(4) ~~Generally to act in all matters of business with you~~

(5) ~~And I/We* request you to act on the above instructions and in particular to pay and honour all such cheques, bills or notes notwithstanding that any such payment may cause my/our* said account to be overdrawn or may increase an existing overdraft.~~

(6) TO PROVIDE INTERNAL INVESTMENT DRISIONS ONLY

The above shall continue until I/We/one of us* shall give you notice in writing to the contrary.

Date    15/3/02

(Signature of Account Holder(s))

**NAME(S) & SIGNATURE(S) OF PERSON(S) AUTHORISED TO SIGN**

Name in Full            Specimen Signature

ARNIE BANGIS    will sign

                will sign

*delete as appropriate

u/MANDATES/LEA/ 01/02/01

LD    ID

# Mishcon de Reya Solicitors

Our Ref:    53/KJG/DV/SJS
E-mail:     danielle.vides@mishcon.co.uk

21 Southampton Row
London WC1B 5HS
DX 37954 Kingsway

Email: postmaster@mishcon.co.uk
www.mishcon.co.uk

Direct Tel:    +44 (0) 20 7440 7210
Direct Fax:    +44 (0) 20 7404 2667

T.H.

Anthony Holley Esq
SG Hambros Bank & Trust (Jersey) Limited
PO Box 78
13 Broad Street
St Helier
Jersey
Channel Islands  JE4 8PR

23 April 2002

381950
381969

Dear Anthony

## PEARL INVESTMENTS TRADING LIMITED
## ARMINE INVESTMENTS LIMITED

Please find enclosed certified copy letter with regard to the source of funds for the above two accounts.

Kind regards.

Yours sincerely

## DANIELLE VIDES

Enc



REC'D
26 APR 2002

g:\vides\letters 2\widda 6299.doc

Switchboard: +44 (0)20 7440 7000
Main Fax:    +44 (0)20 7404 5982

A list of partners is available
for inspection at the above address

March 28, 2000

Ansbacher (BVI) Limited
PO Box 659
International Trust Building
Road Town
Tortola
BVI

Re: Source of Funds

Dear Sirs

As you are aware, we have incorporated two companies, one by the name of Pearl Investments Trading Limited and the other by the name of Armine Investments Ltd. We understand that in order for Ansbacher (BVI) Limited to provide directors for these companies they must be aware that the funds to be deposited into the companies and their related bank/brokerage accounts were derived from legitimate sources.

We advise that the initial funds of US$8m will be sent from National Westminster Bank at Bloomsbury Parr's Branch, London WC1V 7BX to SG Hambros Bank and Trust (Jersey) Limited. We confirm that these funds were accumulated by investments and income from the ownership of Icebrand Seafood Inc which imports and distributes fish products.

Yours faithfully

First Advisory Trust reg. as Trustees of
**ROSEBUD SETTLEMENT**

WE CERTIFY THAT THIS IS A
TRUE COPY OF THE ORIGINAL
Mishcon de Reya (Solicitor)
21 SOUTHAMPTON ROW, LONDON, WC1B 5HS
MISHCON DE REYA, SOLICITORS