UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                              Plaintiff,

        v.

GRANT BERMAN, et al.,

                              Defendants.

03 CRIM. 0308 (LAK)

**MEMORANDUM IN SUPPORT OF DEFENDANT GRANT BERMAN'S CONSENT MOTION
TO WITHDRAW HIS PREVIOUSLY-ENTERED PLEAS OF GUILTY**

PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036

*Counsel for Defendant Grant Berman*

## PRELIMINARY STATEMENT

Defendant Grant Berman respectfully submits this Memorandum in support of his motion with the consent of the Government to withdraw his guilty pleas to Information S2 03 Cr. 308 (LAK) (the "Information"), pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B). Mr. Berman pleaded guilty to the four felony counts in the Information on October 3, 2003, but after almost eleven years, has yet to be sentenced. The charges relate to a scheme to illegally import rock lobster and Patagonian toothfish into the United States in 2001 and 2002. Mr. Berman seeks to withdraw his pleas on the ground that the extraordinary circumstances of this case – including that he has been awaiting sentencing and living under threat of imprisonment and deportation for nearly eleven years, during which time he has developed extensive familial, social and professional ties to the United States; that he provided substantial cooperation and invaluable information to the Government in this case; and that his plea was significantly more onerous than that of David Bengis, one of the more culpable codefendants against whom Mr. Berman cooperated—provide "fair and just" grounds for withdrawing his pleas under Rule 11(d)(2)(B). The Government consents to the withdrawal of Mr. Berman's pleas and has offered to resolve this matter on the same terms offered David Bengis, who pleaded guilty to a misdemeanor and was sentenced over ten years ago. Mr. Berman has agreed to the Government's offer.

## BACKGROUND

Mr. Berman is a South African national who immigrated to the United States with his wife in 1999 and became a legal permanent resident in September 2001. Declaration of Grant Berman dated September 17, 2014, ¶¶ 1-3 ("Berman Declaration"). On August 4, 2003, Mr. Berman was charged in the S1 Indictment to conspiracy to violate the Lacey Act and

substantive Lacey Act violations relating to the illegal importation of lobster and fish from South Africa.  Along with Mr. Berman, the S1 Indictment charged Arnold Bengis, David Bengis, Jeffrey Noll, and Shaun Levy with conspiracy and Lacey Act offenses.

At the time of his indictment, Mr. Berman was living and working in San Diego, California, with his wife and then two year-old son, who was born in the United States and is a U.S. citizen.  Berman Declaration ¶¶ 4-5 .  Based on conversations with the responsible AUSA, his lawyer at the time, Michael Berg, informed Mr. Berman that the Government was interested in meeting with him to discuss the charges and the possibility of entering into a cooperation agreement.  Mr. Berg then arranged for Mr. Berman to travel to New York and proffer with the Government over the course of two days in mid-September 2003.  During those proffer sessions, Mr. Berman answered all of the questions investigators asked of him truthfully and completely.  Berman Declaration ¶ 6.

Shortly after those proffer sessions, Mr. Berg informed Mr. Berman that the Government wanted him to cooperate, but would insist that he plead guilty to four felonies, even though the pending indictment only charged conspiracy and Lacey Act violations that were potentially misdemeanors.  After discussing the charges and the terms of the cooperation agreement, Mr. Berg recommended that Mr. Berman accept the cooperation agreement and plead guilty to the four felonies.  Berman Declaration ¶ 7.

On October 2, 2003, Mr. Berman waived indictment and pleaded guilty before a magistrate judge to four felonies charged in the newly-filed Information:

> Count 1:  Conspiracy to Violate the Lacey Act and to Commit Smuggling and Wire Fraud (Title 18, United States Code, Section 371)
>
> Count 2:  Lacey Act (Title 16, United States Code, Sections 3372(a)(2)(A) and 3373 (d)(1)(A) & (B) ; and Title 18, United States Code, Section 2)

Count 3:  Smuggling (Title 18, United States Code, Sections 545 & 2)

Count 4:  Wire Fraud (Title 18, United States Code, Sections 1343 & 2)

Unbeknownst to Mr. Berman at that time, as a result of his guilty pleas, Mr. Berman was subject to mandatory deportation and loss of his legal residency status.  Mr. Berman was later advised by an immigration attorney that he retained that three of the four felonies to which he pleaded guilty constitute crimes of moral turpitude and are likely aggravated felonies under the Immigration & Nationality Act ("INA").  If a non-citizen is convicted of a crime of moral turpitude or an aggravated felony, he is subject to deportation from the United States and is no longer eligible for permanent resident status.[1]  Berman Declaration ¶ 9.

Mr. Berman cooperated extensively with the Government, regularly speaking with prosecutors on the phone and meeting with them in person on many occasions between 2003 and 2004.  In March and April of 2004, three of Mr. Berman's codefendants pleaded guilty to charges in the S1 Indictment based in large part on his cooperation.  Pursuant to an agreement with the Government, one of those codefendants, David Bengis, who played a much more significant role in the charged conspiracy and for a far longer period of time, pleaded guilty to a single misdemeanor charge, and the remaining charges against him were dismissed.  Berman Declaration ¶ 8.

---

[1]  Mr. Berman's immigration attorney referenced 8 U.S.C. § 1227(a)(2)(A)(i), which makes deportation for crimes involving moral turpitude presumptively mandatory:

> "Any alien who (I) is convicted of a crime involving moral turpitude committed within five years (or 10 years in the case of an alien provided lawful permanent resident status under section 1255(j) of this title) after the date of admission, and (II) is convicted of a crime for which a sentence of one year or longer may be imposed, is deportable."

In the ten years that have since elapsed, Mr. Berman has awaited a sentencing date and provided information to the Government whenever it was asked of him. Throughout that time, his previous lawyer advised him to wait patiently for the Government to request a sentencing date. But in 2013, with the charges and possible immigration consequences weighing heavily on him, Mr. Berman decided to try to bring the matter to a resolution. He contacted Mr. Berg and asked him to reach out to the U.S. Attorney's Office and the Court to schedule his sentencing. Shortly after Mr. Berg did so, Mr. Berman decided to retain new counsel and hired Patterson Belknap Webb & Tyler, his current attorneys, to represent him in this matter. Berman Declaration ¶ 11.

## ARGUMENT

Federal Rule of Criminal Procedure 11(d)(2)(B) permits a defendant to withdraw a guilty plea after the court accepts the plea but before it imposes a sentence if the defendant can show a "fair and just reason for requesting the withdrawal." Here, there are fair and just reasons for Mr. Berman to withdraw his pleas. Specifically, Mr. Berman pleaded guilty over eleven years ago and has offered substantial cooperation since then. Over the course of those eleven years, he and his family have established firm roots in the United States, and Mr. Berman would face deportation if he were finally convicted of the charges to which he pleaded.[2] Further,

---

[2] Based on the circumstances of his previous representation, Mr. Berman believes that he was denied constitutionally effective assistance of counsel because he was not advised that the consequence of his guilty pleas would be virtually certain deportation. *See Padilla v. Kentucky*, 559 U.S. 356, 360, 130 S. Ct. 1473, 1478 (2010) (holding that an attorney's failure to advise his client that a criminal conviction would subject him to presumptively mandatory deportation amounted to constitutionally ineffective assistance of counsel); *United States v. Bonilla*, 637 F.3d 980, 984 (9th Cir. 2011) ("A criminal defendant who faces almost certain deportation is entitled to know more than that it is possible that a guilty plea could lead to removal; he is entitled to know that it is a virtual certainty."); *United States v. Urias-Marrufo*, 744 F.3d 361, 368 (5th Cir. 2014) (holding that defendant could make out a *Padilla* violation if she was not advised of the "certain deportation consequences of her plea" prior to pleading guilty). The Government does not agree with Mr. Berman's position, but consents to his motion to withdraw his pleas based on the other

4

shortly after his plea and as a result of his cooperation, one of Mr. Berman's codefendants, David

Bengis, who was substantially more involved in the underlying criminal conduct for a longer

period of time, pleaded guilty to a far less serious charge than those to which Mr. Berman

pleaded pursuant to an agreement with the Government.  Mr. Berman's circumstances are

unique, and the Government agrees they provide a "fair and just reason" for granting his request

to withdraw his pleas.

A.      **Mr. Berman's Substantial Cooperation and the Resulting Delay in
Sentencing Since His Pleas Presents a "Fair and Just Reason" for
Withdrawing the Guilty Pleas**

It has been almost eleven years since Mr. Berman pleaded guilty—eleven years

during which this matter remained unresolved and Mr. Berman lived with the possibility of

imprisonment and deportation hanging over his head.  Sentencing in this case was delayed in

order to permit Mr. Berman's cooperation, which he readily gave and which helped secure the

guilty pleas of his codefendants.  Furthermore, the possibility that the Government would need

Mr. Berman to testify at a hearing regarding outstanding restitution issues in David Bengis's case

further delayed resolution of Mr. Berman's case.  Mr. Berman's cooperation with the

prosecution, coupled with personnel changes among the AUSAs responsible for his case, led to

an unusually long delay between the time Mr. Berman pleaded guilty and his sentencing.  *See*

*e.g.*, *United States v. Ray*, 578 F.3d 184, 198 (2d Cir. 2009) (stating that "[d]elay in sentencing

may leave the defendant . . . in limbo concerning the consequences of conviction" and noting

that the defendant's fifteen-year delay in sentencing was "without doubt, extraordinary") (citing

---

unique circumstances of this case.  Mr. Berman reserves his right to raise that argument in a later motion
if the Court were to deny this Consent Motion.

3 Charles Alan Wright *et al.*, Federal Practice & Procedure: Criminal § 521.1 (3d ed. 2004))[3];

*United States v. Howard*, 577 F.2d 269, 270 (5th Cir. 1978) (noting that sentencing delay "disserves a basic notion that, once convicted, an offender should be able to serve his sentence and be done with it").

During that time, Mr. Berman had two more children (both born in the United States), his wife became an American citizen, and several of his family members immigrated to the United States from South Africa. All of Mr. Berman's living family members, as well as his family's entire support network of friends, now live in the United States. Mr. Berman also became a partner at Axiom Solutions, a U.S.-based business.

Over the last eleven years, Mr. Berman and his family have built their lives in the United States and established firm professional, social, and familial roots here. Now, as a result of the guilty pleas he entered in 2003, Mr. Berman faces almost certain deportation, forcing him to choose between separating from his family or moving his children away from the only home they have ever known. Leaving the United States would also force Mr. Berman to resign from his position at Axiom, the primary source of income for his family. These extraordinary circumstances present a fair and just reason for withdrawing Mr. Berman's guilty pleas.

**B.** **The Disparity between Mr. Berman's Plea and that of his More Culpable Codefendant Provides a "Fair and Just Reason" for Withdrawing the Pleas**

Based in large part on Mr. Berman's cooperation, the Government was able to secure the guilty plea of his codefendant David Bengis and other codefendants. Mr. Bengis was at the center of the conspiracy charged by the Government, and was much more involved in the

---

[3] In *United States v. Ray*, the Second Circuit held that a delay in sentencing may, in some circumstances, violate a criminal defendant's due process rights. *See id.*, 578 F.3d 184, 199 (2d Cir. 2009). Mr. Berman is not asserting such a violation in this motion, but is not waiving his right to raise that argument in a later motion if the Court were to deny this Consent Motion.

criminal conduct and for a longer period of time than Mr. Berman. Yet Mr. Bengis was permitted to plead guilty to a far lesser charge—one misdemeanor count of conspiracy to violate the Lacey Act—than those to which Mr. Berman pleaded pursuant to his cooperation agreement with the Government. In other words, Mr. Berman pleaded guilty to several more serious felony offenses, despite the fact that he cooperated with the Government, helped secure the convictions of his codefendants, and was far less culpable than Mr. Bengis.

In very limited situations where a cooperating defendant has pleaded guilty but later events involving his codefendants created a substantial disparity in the resolution of the charges, the Government has exercised its discretion to allow withdrawal of the pleas previously entered. *See, e.g.*, *United States v. Bongiorno*, 07 Cr. 9287 (SHS). Such situations are highly dependent on the particular circumstances of the relevant case. The Government agrees that those extraordinary circumstances are present here and warrant the withdrawal of Mr. Berman's pleas.

The Government has offered—and Mr. Berman has agreed to accept—a resolution whereby Mr. Berman would enter a plea of guilty to a misdemeanor count of conspiracy to violate the Lacey Act, consistent with the plea entered by codefendant David Bengis. If the Court were to grant this Consent Motion, Mr. Berman will enter such a plea at the next scheduled court conference.

## CONCLUSION

For these reasons, the Court should grant Defendant Grant Berman's consent

motion to withdraw his previously entered guilty pleas.

Dated:      New York, New York
             September 17, 2014

Respectfully submitted,

PATTERSON BELKNAP WEBB & TYLER LLP


By:  /s/ Daniel S. Ruzumna
     Daniel S. Ruzumna
     Elena Steiger Reich
     1133 Avenue of the Americas
     New York, NY 10036
     druzumna@pbwt.com
     (T) 212 336-2000
     (F) 212-336-1205

     *Counsel for Defendant Grant Berman*